In the Matter of Joyce Edward BARTLESMEYER and Emma Lou Bartlesmeyer, Debtors.

FEDERAL LAND BANK OF ST. LOUIS, Objecting Creditor,

v.

Joyce Edward BARTLESMEYER and Emma Lou Bartlesmeyer, Respondents.

Bankruptcy No. 87–02122–SW–12.

United States Bankruptcy Court, W.D. Missouri, Southwestern Division.

Sept. 1, 1987.

Timothy R. Whelan, Copeland, Scott & Whelan, Joplin, Mo., for objecting creditor.

James L. Bowles, Daniel, Clampett, Lilley, Dalton, Powell & Cunningham, Springfield, Mo., for respondents.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER DETERMINING MARKET RATE OF INTEREST TO BE 10.5% PER ANNUM OR CONTRACT RATE, WHICHEVER IS LOWER

DENNIS J. STEWART, Chief Judge.

This court, in its prior decisions on rates of interest applicable in chapter 11 reorganization cases and chapter 13 arrangement cases, has previously held that an undersecured creditor is entitled to interest at the

market rate (presumed to be the legal rate, in the absence of evidence to the contrary). *Matter of Coburn*, 36 B.R. 550 (Bkrtcy.W. D.Mo.1983); *Matter of Johnston*, 44 B.R. 667 (Bkrtcy.W.D.Mo.1984).

Prior to consideration of the issue of confirmation, the objecting creditor seeks to establish its market rate of interest for the purpose of ensuring that it receives the present value of its claim as required by § 1225(a)(4) of the Bankruptcy Code. Therefore, pursuant to its request, a hearing on that issue was held on July 31, 1987, in Joplin, Missouri, whereupon the parties appeared by respective counsel and the objecting creditor offered expert opinion evidence of the market rate of interest. The expert stated that he adopted the standard applied by the bankruptcy court in *Matter of Doud*, In proceedings for an adjustment under chapter 12 of the Bankruptcy Code No. 86–3396–C, slip op. at 3 (Bkrtcy.S.D. Iowa June 10, 1987), to the following effect:

> "The appropriate discount rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration for the quality of the security and the risk of subsequent default."

> \* \* \*

> "The court finds the yield on treasury bonds to be the preferable riskless rate for the reason that the yields on treasury bond rates are reported on a variety of maturity dates which permits accurate matching of the rate with the repayment periods in a Chapter 12 plan. . . .

> "The difference between government securities and plan payments should be accounted for in choosing the maturity of the security . . . To reconcile this difference, [one commentator,] Carbimer suggests calculating the percentage of the

average amount outstanding during the repayment to a government security with an equal maturity . . .

> \* \* \*

> "Notwithstanding the elements that tend to reduce risk, Chapter 12 reorganizations have aspects that heighten risk. Arguably the greatest source of risk is the unpredictable notice of the agricultural economy itself. Though a plan must meet the feasibility requirements of 11 U.S.C. section 1225(a)(6), the court is keenly aware that the assumptions contained in the plan and otherwise found reasonable at the time of confirmation are subject to the vicissitudes of the farm economy . . . [and] should a plan fail and the case be dismissed, the creditors will incur collection costs that normally are not incurred with nonagricultural debtors. For instance, in Iowa, a creditor must participate in mandatory mediation before enforcing a security interest in agricultural property. . . .

> "Weighing the positive and negative factors just discussed, the court finds that a 2% upward adjustment adequately compensates a conventional lender for the overall risk associated with a Chapter 12 reorganization. Thus, in Chapter 12 cases, a yield on a treasury bond with a remaining maturity matched to the average amount outstanding during the term of the allowed claim plus a 2% upward adjustment to account for risk best estimates the prevailing market discount rate."

*Matter of Doud*, 74 B.R. 865, 867, 868, 869, 870 (Bkrtcy.S.D.Iowa 1987). Accordingly, comparing the treasury bond rates which may be available to the Federal Land Bank with the amortization period of the underlying loan *sub judice*, it was the opinion of the creditor's expert witness that the available rate was 11% and that, adding the 2% per annum according to the above formula produced a grand total of 13% per annum.[1]

---

1. The opinion of the expert in this regard was uncontradicted, the only evidence on the subject in the hearing before this court. Accordingly, if the formula of the *Doud* case is to be applied in

all its ramifications, the court would have no alternative but to accept the conclusionary opinion of the expert witness in this regard. But, as is observed in the text of this memorandum,

In respect to which of the types of treasury bonds which would be generally available to investors, however, the expert responded that the issue bearing interest at the rate of 9.5% per annum would have most ready availability.[2] It is true that the creditor's expert qualified his answer in this regard by stating that his financial institution—a bank—might not have available to it all the resources for placing money that the federal government has. But, still, no affirmative evidence was adduced that any of the other types of treasury bonds had greater availability to the objecting creditor that the one which has greatest availability generally.

■ This court, therefore, agrees as a general and abstract matter with the formula enunciated in *Matter of Doud, supra.* It also agrees with the principle seemingly expressed in that decision that, if the undersecured creditor has agreed to a contract rate lower than the market rate, a court cannot improve upon the bargain already made by the parties.[3] This court's prior decisions in *Matter of Coburn, supra,* and *Matter of Johnston, supra,* were predicated on an assumption that the contract rate—as it was in these cases—would be greater that the market rate.

■ In principle, this court also agrees that the creditor should, at least in some instances,[4] have additional interest above and beyond the market rate in order to compensate it for the risks assumed by it. But the court does not agree that the risks adverted to in the *Doud* case *supra,* are those which merit some type of compensation. Those risks, moreover, are not shown to be present in the case at bar.[5] The court recognizes that the greatest risk perhaps undertaken by the secured creditor is that of depreciation of the property at a rate faster than payments are made under the plan, so that the collateral does not have the value which it should have at the time of any liquidation. But the concept of adequate protection is available to minimize that possibility.[6] Accordingly, the risk factor cannot be greater than 1% per annum. Admittedly, this figure—as the 2% figure in the *Doud* case seems to have been—is an arbitrary one, a minimal amount meant to guard against the *possibility* of unexpected depreciation. Such a possibility has not been shown, as is usually required, to be a likelihood.[7] Therefore, the court may be able to eliminate the 1% risk factor if and when there is a showing by the debtor that the likelihood of depreciation is nonexistent or minimal or that there is insurance which would enure to the benefit of the secured creditor on liquidation.

It is therefore, in accordance with the foregoing considerations,

this court does not view the "risk factor", in the absence of a showing that depreciation of the security is likely to occur appreciably faster than the rate at which principal is reduced, as being as critical as it is viewed in *Doud* and the authorities there cited.

2. The availability issue is one which is not given a great deal of insight in the *Doud* case. But, in determining "market" rate, a figure which must necessarily reflect the interest which the creditor may have earned if he had the security's value in cash as of the effective date of the plan, availability would appear to be the threshold issue.

3. See 74 B.R. at 870 in which the fact of lower contract rates of interest is denominated "unusual circumstances that justify departing from the aforementioned calculation in determining the discount rate for three of the debtors' four loans with the FmHA."

4. See note 3, *supra.*

5. There is no showing in this case, as there was in the *Doud* case, that special mediation procedures would be a prerequisite to recovery of the collateral if the plan fails.

6. "The purpose of [adequate protection] is to provide the protected entity with a means of realizing the value of the original property, if it should decline during the case ..." H.R. No. 95–595, 95th Cong. 1st Sess. (1977) 338–40, U.S. Code & Admin.News 1978, pp. 5787–6297; *Matter of Modern Warehouse, Inc.,* 74 B.R. 173, 176 (Bkrtcy.W.D.Mo.1987). Ordinarily, however, such adequate protection is awarded to a creditor only after an explicit factual showing that the decline in value is likely to be greater than principal reduction during the case. See note 1, *supra.* There has been no such showing in this case, but it does not appear that there was any such showing in the *Doud* case, either.

7. See note 6, *supra.*

ORDERED that the market rate of interest be, and it is hereby, found to be 10.5% or the contract rate, whichever is lower.