**In the Matter of Robert Lee FLESHMAN and Carol Marie Fleshman, Debtors.**

**Bankruptcy No. 87–01684–SJ–12–DJS.**

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

Oct. 29, 1987.

---

Stephen B. Strayer, Liberty, Mo., for debtors.

Dennis R. Dow, Shook, Hardy & Bacon, Kansas City, Mo., for Equitable.

David C. Stover, Chinnery, Stover, Waldo, Huston & Bertram, Lee's Summit, Mo., for Federal Land Bank of St. Louis.

F. O. Griffin, Jr., Asst. U.S. Atty., Kansas City, Mo., for F.H.A.

James B. Lowe, Kuraner & Schwegler, Kansas City, Mo., for Ford Motor Credit Corp.

Gregory W. Peterson, Watson & Peterson, Des Moines, Ia., for Graham Equipment Corp.

ORDER CONFIRMING DEBTORS' PROPOSED CHAPTER 12 PLAN OF ADJUSTMENT OF DEBTS ON CERTAIN CONDITIONS AND WITH CERTAIN AMENDMENTS HEREIN MENTIONED AND ON CONDITION THAT NO CREDITOR OBJECTS WITHIN 21 DAYS OF THE DATE OF FILING OF THIS ORDER ON GROUNDS WHICH WERE NOT FAILED HITHERTO TO BE RAISED PURSUANT TO THE COURT'S PRIOR NOTICES

DENNIS J. STEWART, Chief Judge.

In this chapter 12 case, the debtors have filed with the court and have circulated to creditors a proposed plan of debt adjustment. Previously, this court issued its orders submitting the issues involved in the issue of confirmation of that plan to nonbinding arbitration. The order directing such submission was entered by this court on August 5, 1987. That order contained the direction that:

"the parties in favor of and opposed to confirmation of the plan (shall) file their respective affidavits and proposed conclusions of law in accordance with (the court's general order of July 10, 1987) within fifteen (15) days after the date of service of copies of this order and the attached order upon them by *counsel for the proponents of the plan, who shall,* within ten (10) days of the date of filing of this order, certify the fact and date of such service to the court." (Emphasis in original.)

The court's order was not served upon other parties, nor was such service certified to the court, until August 21, 1987. Thereafter, some of the parties requested extensions of time in which to complete and file their respective affidavits and proposed conclusions of law, with the result that the final affidavits and conclusions of law were not filed until September 29, 1987.[1] Ac-

---

1. The arbitration proceedings were, as observed in the text of this memorandum, initiated by the court on August 5, 1987. Completion of those proceedings on the time schedule set out by the court in that order would have brought substantial compliance with the provisions which require that the final hearing on confirmation be concluded within 135 days of the date of filing. But the Equitable Life Assurance Society, first filing a motion for extension of time on September 3, 1987, took until September 14, 1987, in which to file its affidavits and proposed conclusions of law and the Farmers Home Administra-

cordingly, the arbitrator has not yet been able to render a decision. Counsel for the creditor Equitable Life Assurance Society now requests that the court proceed to consider the confirmation issue, in view of the delay which has beset the arbitration proceedings.[2] The court will do so. The objections to confirmation of the debtors' proposed plan of adjustment will be taken up seriatim in the paragraphs which follow:

### Federal Land Bank of St. Louis

In brief summary, the affidavits and proposed conclusions of law which have been submitted by the Federal Land Bank of St. Louis oppose confirmation of the plan on the grounds that (1) the value of its security is actually $55,400 ($50,000 in value of property and $5,400 in value of certain stock) rather than the $28,700 assigned to the same security by the debtors); (2) the plan proposes to pay interest at the rate of 9% per annum over a thirty year period when "the base rate of interest on this loan is 12.5% with a default rate of 13.5%"; (3) that "debtors show no actual farming income in their Summary of Operations showing only cash rent, CRP bonus, CRP annual payment and ASCS cost share" and have not shown feasibility of their plan; (4) that there is a $10,000 CRP bonus which is unencumbered and must be paid pro rata to unsecured and undersecured creditors under section 1225(a)(4) of the Bankruptcy Code; and (5) that there is an arrearage of $27,875 which the debtors do not appear to cure in the immediate future.

■ With respect to the initial issue of the value of the security, the creditors—as appears to be the usual case in the recent history of chapter 12 litigation—have assigned a value to the property which is approximately twice that which has been assigned by the debtors. The court, in reviewing the papers before it which the arbitrator would have reviewed in the arbi-

tration process, observes that the two sets of appraisals have strengths and weaknesses. The appraisal presented by the objecting creditor, of course, is backed by greater credentials and more formal experience of the appraiser in question. But the values asserted by the debtors, made under oath in connection with the filing of the schedules accompanying the petition for relief, also have their strengths, namely the more intimate familiarity they have with the property over a greater period of time. When it appears, without more, that the two sets of appraisals would have to be accorded nearly equal evidentiary weight— or, at least, comparable evidentiary weight—the court would have little alternative except to make its finding that the true value of the property is somewhere in between the values asserted. Thus, as a preliminary matter, subject to the right of the parties, or either of them, to request that the court appoint a neutral appraiser pursuant to the provisions of Rule 706 of the Federal Rules of Evidence, for which they would have to pay according to a ratio determined by comparing the final finding on value to their initial contention, the court proposes to find that the value of the security of the Federal Land Bank of St. Louis is $42,050. Accordingly, the plan may be confirmed if it is amended to provide for payment to the Federal Land Bank of St. Louis of that amount as a secured amount.

■ Next, the Federal Land Bank of St. Louis objects to the proposal to pay only 9% interest on the secured claim, stating that "the base rate of interest on this loan is 12.5% with a default rate of 13.5%." The objecting creditor purports to rely on the decision of our court of appeals in *In re Monnier Bros.*, 755 F.2d 1336, 1339 (8th Cir.1985), for the principle that the contract rate is presumptively the correct rate to be

---

tion did not file its documents until September 29, 1987.

**2.** "The last submission in response to this Court's order was made on September 28, 1987. Accordingly, the arbitrator's decision in this matter should have been rendered on or before October 19, 1987. A review of the file on Octo-

ber 22 indicates that no decision has yet been rendered. Please advise if there is anything I can do to expedite the arbitrator's decision in this matter." Letter of October 23, 1987, of counsel for Equitable Life Assurance Society of the United States to the court.

applied. In that case, however, the court of appeals held that it was appropriate for the district court to have applied the contract rate in a case in which the applicable creditor was oversecured. This court, in its prior decisions, has agreed with this position. See *Matter of Coburn*, 36 B.R. 550, 551 (Bkrtcy.W.D.Mo.1983) ("This court agrees with the principle that, in the instance of an oversecured creditor, postpetition interest can be paid, in the discretion of the court, as provided in the agreement between the parties, up to the point where it, when added to total principal to be paid and allowable costs and fees, equals the value of the collateral."). The Federal Land Bank of St. Louis, however, relies upon the bankruptcy court decision of *In re Citrowske*, 72 B.R. 613, 617 (D.Minn.1987), in which the bankruptcy court stated:

"Absent any evidence of collusive or discriminatory policies, the interest rate which the creditor involved would charge to the debtor in the present regular loan market is presumptively the correct interest rate, keeping in mind, however, that the ultimate decision about the quality of the security and the risk of subsequent default is for the court and not the creditor."

If a creditor is undersecured or unsecured, however, the market rate is the most that can be obtained. To hold otherwise would be not only to negative the provisions of section 506(b) of the Bankruptcy Code (which limit application of the contract rate "(t)o the extent that an allowed secured claim is secured") and common sense, but to erase distinctions in this regard between oversecured and undersecured creditors. Consequently, this court has held that, without evidence on the subject, an undersecured creditor is entitled to interest at the presumed market rate, which is the legal rate of 9%. "In the absence of a statement or showing of the current market rate, as in the case at bar, the legal rate of interest, 9% in Missouri, on the value of the collateral ... (or) on (a lower) declining balance, is all that is payable." *Matter of Johnston*, 44 B.R. 667, 670 (Bkrtcy.W.D.Mo.1984). In order to demonstrate that a given rate of interest is the appropriate market rate, moreover, the creditor must show that that rate of interest is "readily available" to it. *Matter of Bartlesmeyer*, In proceedings for an adjustment of debts under chapter 12 of the Bankruptcy Code, 78 B.R. 975 (Bkrtcy.W.D.Mo.1987). The creditor in this case has made no such showing or offer, although granted an explicit opportunity to do so by means of the notice of submission of the confirmation issues to arbitration.

■ The Federal Land Bank of St. Louis next objects to the feasibility of the plan. But the figures which are recited by it in its analysis seem to the court to be close enough to establishing at least marginal feasibility. The court, further, in order to obviate any undue concern respecting the issue of feasibility, will confirm the plan only on condition that annual payments not await the passage of a year from the effective date of the plan in order to commence; rather, that all payments commence within 40 days of the effective date of the plan.

Finally, the Federal Land Bank of St. Louis mentions the contention that the payments to it are currently in arrears to the extent of $27,875 and that confirmation should be denied unless the debtors propose to cure that arrearage. The court assumes that the amount in arrears is part of the total amount due. It appears to be the purpose of chapter 12 to permit considerable extensions of obligations in order to aid family farmers in an effort to readjust their economic maladies.

### *Farmers Home Administration*

In summary, the objection of the Farmers Home Administration to confirmation of the debtors' proposed plan of adjustment is that the debtors have undervalued the property which constitutes the collateral of Farmers Home Administration. They contend that the chattels should be valued at $52,499.14 and the land at $265,750.00 (rather than the $188,000 at which it is valued by the debtors). The debtors propose to pay the Farmers Home Administration only the value of certain machinery on which it has a security interest, the sum of $11,625.00. In view of the foregoing con-

**998**

siderations respecting the respective appraisals which are advanced, the court proposes to find that the value of the machinery is $32,062.07 and that the value of the land is $226,875 and direct that the rights of Farmers Home Administration under the plan be adjusted accordingly.

### Equitable Life Assurance Society of the United States

The Equitable Life Assurance Society of the United States similarly objects on the grounds of valuation of its collateral, stating that the debtors propose to pay it $160,100 under the plan whereas they hold security interests in collateral totaling $398,000. The general considerations stated above respecting value require this court to hold that the secured creditor Equitable Life Assurance Society of the United States is a fully secured creditor to the extent of the alleged balance due of $183,286.36. For the same reasons as stated above with respect to the Federal Land Bank of St. Louis, payment of the full balance due at 9% per annum would not be appropriate. The contract rate is applicable to the extent of $226,875.

### Graham Equipment Corporation

Graham Equipment Corporation, with a claim of $8,666.67, offers proof to show that the fair market value of its collateral is $8,666.67 rather than the $2,000 assigned by debtors. In view of the abovementioned principles, the court proposes to find that the value of the collateral is $5,333.33, unless either or both parties request appraisal by a neutral court-appointed appraiser at their expense pursuant to Rule 706 of the Federal Rules of Evidence.

### Ford Motor Credit Corporation

On the issue of adequate protection, the debtors proposed to pay the claim in full in the amount of $400.00 within one year at 10% interest. Ford Motor Credit Corporation originally objected to this proposal as one of adequate protection, but then did not object to the confirmation of the plan according to the records now before the court. The court therefore assumes that this former controversy has been resolved.

Accordingly, for the foregoing reasons, it is hereby

ORDERED that the debtors' proposed plan of adjustment be, and it is hereby, confirmed on condition that it be amended in writing within 30 days of the date of filing of this order to comport with the foregoing considerations, unless, within 15 days of the date of filing of this order, one or more parties requests this court, in writing, to appoint a neutral appraiser under the provisions of Rule 706 of the Federal Rules of Evidence, or there is otherwise a written objection filed with the court within 21 days of the date of filing of this order to confirmation of the plan in accordance with the above and foregoing considerations.*

---

* The clerk of this court shall effect service hereof by mail on all parties according to the mailing matrix.