**In re Anthony DeSANTO, Jr., Debtor.**

**In re ECHO HOLLOW FARM, INC., Debtor.**

**Bankruptcy Nos. 5–93–00127, 5–93–00128.**

United States Bankruptcy Court, M.D. Pennsylvania.

Oct. 14, 1994.

Daniel Mathers, Williamsport, PA, for Anthony DeSanto, Jr. and Echo Hollow Farm, Inc.

William Carlucci, Williamsport, PA, for Jersey Shore State Bank.

Larry Reinhold, Pittsford, NY, for John Deere Co.

Thomas Marshall, Williamsport, PA, for Waltz & Case Cred. Corp.

Charles Szybist, Trustee, Williamsport, PA.

## *OPINION AND ORDER*

JOHN J. THOMAS, Bankruptcy Judge.

Pending for resolution are various objections filed to the Debtors' Third Amended Plan. For the reasons provided herein, the objections are sustained. The court, however, will continue the automatic stay or injunction, as the case may be, for an additional forty-five (45) days from the date of this Opinion and Order.[1] Within this forty-five (45) day period, the Debtors must file a Fourth Amended Plan in conformity with this opinion. On the Debtors' failure to do so, then upon certification of a party, the automatic stay or injunction will be terminated.

Objections were filed by the Chapter Twelve Trustee, Charles A. Szybist, Esquire, (hereinafter "Trustee"), in addition to the following creditors: C.H. Waltz Sons, Inc., John Deere & Company, Jersey Shore State Bank, Commonwealth Bank, and Richard B. and Margaret J. Kemp. A common thread runs through each objection namely that the Debtors have failed to submit evidence, either testimonial or written, to show this court and the Debtors' creditors that these Debtors can, in fact, put forth a feasible Plan of Reorganization. All of the creditors voiced a concern that the Plan did not provide them, in accordance with *GMAC v. Jones, 999 F.2d 63 (3rd Cir.1993),* the present value of their secured interest. In short, they argue that the Plan reduced the contracted interest rate for all of the creditors, except C.H. Waltz Sons, Inc., and that reduction does not meet the "cram down" provisions found in Chapter Twelve of the Bankruptcy Code and, in particular, at Section 1225(a)(5)(B)(ii).

█ In an Opinion and Order filed contemporaneously with this Opinion and Order, (*In re McKean, 178 B.R. 637 (Bkrtcy. M.D.Pa.1994)* ), this court found that the reasoning of the Third Circuit case of *GMAC v. Jones, supra,* which held that the rate of interest under Section 1325(a)(5)(B)(ii) is "that which the secured creditor would charge, at the effective date of the plan, for a loan similar in character, amount and duration to the credit which the creditor will be required to extend under the plan" that was equally applicable to Chapter Eleven cases. Because the cram down provisions of Chapter Twelve are very similar to the cram down provisions embodied in Chapter Eleven (Section 1129(b)(1), (b)(2)(A)(i)(II)) and in Chapter Thirteen (Section 1325(a)(5)(B)(ii)), this court, for the same reasoning as enunciated in *McKean, supra,* adopts the Third Circuit's coerced loan approach to determining the applicable interest rate in a cram down situation in Chapter Twelve cases. See also **Jack**

---

1. Although the creditors are stayed by 11 U.S.C. § 362, the stay has been terminated with regard to some equipment, but an injunction was issued at the request of the Debtors pending this determination.

636

Friedman, *What Courts Do To Secured Creditors In Chapter 11 Cram Down*, 14 Cardozo L.Rev. 1495, 1515 (1993).

Turning to the facts elicited at the hearing on this matter, the court notes that there is a marked difference between the evidence presented to this court during the trial in the *McKean* case, *supra*, and the instant case held on November 4, 1993. In *McKean* there was absolutely no testimony presented as to a creditor's current rate for a loan of a similar character, amount and duration. In the instant case, however, we have considerable testimony from a Mr. Ronald A. Walko, senior vice president and senior loan officer for Jersey Shore State Bank. Mr. Walko testified in great detail concerning the applicable interest rates of a kind similar to all of those represented by the above-captioned Debtors. These loans range from commercial mortgages to residential mortgages and equipment loans. In each case, Mr. Walko testified that the current market rate of the creditors of a similar nature represented in this proceeding were in each case substantially higher than those proposed by the Debtors. In one instance, Debtors' proposal varied a full 4.5 percent from the actual contract rate and the current interest rate.

The Third Circuit in *GMAC v. Jones* indicates that it would be appropriate for a bankruptcy court to "accept a plan utilizing the 'contract rate' if the creditor fails to come forward with persuasive evidence that its current rate is in excess of the contract rate. Conversely, utilizing the same rebuttable presumption approach, if a debtor proposes a plan with a rate less than the contract rate, it would be appropriate, in the absence of a stipulation, for a bankruptcy court to require the debtor to come forward with some evidence that the creditor's current rate is less than the contract rate." *GMAC v. Jones, supra at pages 70, 71.*

■ As indicated, the creditors, mainly through the testimony of Mr. Walko, did present this court with very persuasive evidence that the current rates, if not in excess of the contract rates actually presented, were very close to the contract rates. This is true for most of the mortgages and the equipment

loans. The court notes that the plan proposes a reduction of interest rate in the Kemp mortgage from ten percent (10%) as provided by the contract to seven and one-half percent (7½%). Additionally, the percentage rate offered by the plan matches that in the contract with C.H. Waltz Sons, Inc. Of equal importance, however, was the testimony that in each case, a creditor's current rate for a loan of a similar character, amount and duration was in excess of that proposed by the plan.

In contrast to the testimony submitted by the creditors, the Debtor's own testimony concerning his income and ability to fund a plan meeting all of the Code requirements of Chapter Twelve was, at best, confused and sketchy. Absolutely no evidence was presented by the Debtor that the plan and interest rates proposed by that plan would meet the cram down provisions of Chapter Twelve.

We therefore conclude that in order for this Plan to be approved, it must offer at least the contract rate provided in the Debtors' original obligations to the creditors.

The court does not render its decision based upon the Debtor's ability to generate income sufficient to render the instant Chapter Twelve plan feasible. The court, at this point, only determines that the plan as proposed does not meet the "cram down" provisions of Chapter Twelve particularly Section 1225(a)(5)(B)(ii).

While the court sustains the objections to the plan, it will also continue the automatic stay or the injunction whichever is applicable to the specific creditor. Such continuation is conditioned on the Debtors continuing to make the payments to the Trustee as proposed by the Third Amended Plan. It is further conditioned on the Debtors, within forty-five (45) days of the date of this Opinion and Order, filing a Fourth Amended Plan in conformity with this Opinion. Otherwise, on Certification, the stay or injunction will be automatically terminated without further notice or hearing with this court.