In re Ronald McKEAN t/a Futuristic
Sounds, Debtor.

In re Ronald McKEAN t/a Futuristic
Sounds, Debtor.

Richard A. SIMPSON and Phyllis A.
Simpson, his wife, Movants,

v.

Ronald McKEAN t/a Futuristic Sounds
and Darryl W. Bender, Trustee,
Respondents.

Bankruptcy No. 5–93–01257.

United States Bankruptcy Court,
M.D. Pennsylvania,
Wilkes–Barre Division.

Oct. 14, 1994.

Stephen Bresset, Honesdale, PA, for debt-
ors/respondents.

David A. Gniewek, Milford, PA, for mov-
ants.

### *OPINION AND ORDER*

JOHN J. THOMAS, Bankruptcy Judge.

Before the court is an objection by Richard
Simpson, (hereinafter "Objector"), to the
Debtor's proposed Chapter 11 Plan and also,
a Motion filed by Richard Simpson and Phyl-
lis Simpson, (hereinafter "Movants") request-

ing the lifting of the automatic stay so that the Movants can proceed to enforce their state law remedies against certain real estate owned by the above-captioned Debtor. For the reasons provided herein, the court will sustain the objection to the Chapter 11 Plan and will further deny the request to lift the automatic stay but this denial is conditioned upon the Debtor fulfilling certain requirements set forth in detail later in this opinion.

The facts are as follows. On or about July 1, 1993, Ronald J. McKean trading as Futuristic Sounds, (hereinafter "Debtor), filed a voluntary Chapter Eleven petition in this court. Following approval of the Debtor's disclosure statement by an Order November 5, 1993, the Debtor filed a Plan of Reorganization. That Plan is the subject of the instant objection filed by the Objector.

Prior to the bankruptcy, Movants and Debtor entered into a mortgage agreement on or about July 5, 1990 recorded in Pike County, Pennsylvania at Record book 280 at page 86. That mortgage secures a note also dated July 5, 1990 in the principal sum of One Hundred Eleven Thousand Dollars ($111,000.00). The note provides for interest at a yearly rate of eleven percent (11%) with a monthly payment in the amount of One Thousand One Hundred Forty–Five and 74/100 Dollars ($1,145.74). Payments were to commence on the fifth day of each month beginning on August 5, 1990 and were to continue until all principal and interest and other charges under the note were paid in full. The note, however, called for a balloon payment to be made by the Debtor on any amounts due under the note on July 5, 1993.

The Plan restructures the terms of the note and the mortgage by extending the payment period to twenty (20) years with a yearly interest rate of eight percent (8%).

At the time of the consolidated hearing on the Objection and the Motion, the parties agreed that the approximate amount of the debt was One Hundred Six Thousand Seven Hundred Dollars ($106,700.00). The only uncontested valuation of the real estate presented to the court was the opinion propounded by the Objector that the property had a value of One Hundred Six Thousand Seven Hundred Dollars ($106,700.00). No objections were raised as to the feasibility of the Plan as a whole. The main argument made by the Objector is that the recasting of the mortgage does not put him in the same position as if this was a chapter seven case or he was permitted to immediately foreclose on the property. The Objector indicates that he has obligations to his creditors based upon the Debtor's original mortgage and by restructuring the mortgage as provided for in the Plan, the Objector cannot meet his obligations. Consequently, the Objector argues that the Plan is not fair or equitable.

The arguments made by the Movants in the Motion to lift the stay are summarized by the Movant's allegation that because of a failure to make post-petition mortgage payments combined with the Debtor's failure to provide adequate protection, cause exists pursuant to Section 362(d)(1) of the Code to lift the stay so that the Movants can proceed to enforce their contractual and state law rights and remedies against the real estate.

The Debtor's response is that the Plan meets all of the Code requirements for confirmation of a Plan contemplated by 11 U.S.C. § 1129 and, in particular, the "cram down" provisions found in Section 1129(b)(2)(A)(i)(II). He further argues that because the Plan meets the "cram down" provisions of the Code, it necessarily provides the creditor with adequate protection and, therefore, the Motion to lift the stay should be denied.

The court consolidated the Objection and the Motion into a single hearing because it determined that the conclusive issue for resolution is whether or not the restructuring of the mortgage meets the "cram down" requirements of the Bankruptcy Code as well as providing adequate protection under Section 362.

The "cram down" provisions for Chapter Eleven are embodied in a number of sections but, primarily, in Section 1129(b)(2)(A)(i)(II) which reads as follows:

**11 U.S.C. § 1129(b)(2)(A)(i)(II)**

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(A) With respect to a class of secured claims, the plan provides—

(i)(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

There are several other Bankruptcy Code Sections dealing with "cram downs" by deferred payments and those sections are as follows: § 1129(a)(9)(C), § 1225(a)(5)(B)(ii), § 1325(a)(5)(B)(ii). See **Jack Friedman, What Courts Do To Secured Creditors In Chapter 11 Cram Down,** 14 Cardozo L.Rev. 1495, 1515 (1993). The *Cardozo Law Review, supra,* indicated that at the time of the article every one of the nine court of appeals decisions to consider the "cram down" interest rate found it to be the market rate of commercial loans. *Id. at page 1515, footnote 75.*

A few months later in July of 1993, the Third Circuit decided the case of *General Motors Acceptance Corp. v. Jones,* 999 F.2d 63 (3rd Cir.1993), which case held that the rate of interest under Section 1325(a)(5)(B)(ii) is "that which the secured creditor would charge, at the effective date of the plan, for a loan similar in character, amount and duration to the credit which the creditor will be required to extend under the plan". While this case was a Chapter 13 case, we find that it is applicable to the instant Chapter 11 case.

The Eastern District of Pennsylvania in the case of *In re River Village Associates,* 161 B.R. 127 (Bankr.E.D.Pa.1993) addressed, inter alia, the issue as to the proper interest rate to be used in calculating present value analysis in Chapter 11 plans. The Eastern District, through the Honorable David Scholl, U.S. Bankruptcy Judge, found that in a Chapter 11 plan and, particularly, the cram down context, the proper interest rate was a risk-free rate (based on the treasury obligations or the prime rate) plus an additional premium for risk.

The *In re River Village Associates* case *supra* provides an excellent compilation of the court decisions concerning the calculation of the present value analysis in Chapter 11, 12 and 13 of the Bankruptcy Code. See *In re River Village Associates, supra* at page 135 and 136. That court recognizes the case of *GMAC v. Jones, supra* and its reasoning determining that the coerced loan approach should be applied in Chapter Thirteen cases. That court, however, determined that the rationale of the *GMAC v. Jones* case, as well as *Memphis Bank and Trust Co. v. Whitman,* 692 F.2d 427 (6th Cir.1982) and *In re Hardzog,* 901 F.2d 858 (10th Cir.1990), both cited with approval by the Third Circuit in *GMAC v. Jones,* did not apply in the *In re River Village Associates* case. The court explained why it felt *GMAC v. Jones* did not apply as follows:

As explained above, *Jones* relied on the fact that the interest rate on similar loans was easily ascertainable and, therefore, its ascertainment would reduce the transactional and litigational costs in Chapter 13 cases. This is often true in cases, like *Jones,* involving consumer loans, because there is an existing market where such loans are continuously being made and the interest rates on such loans are often published or advertised.

However, the opposite is true in the situation at issue in the instant proceeding. This case involves a commercial loan on an apartment complex in an economically depressed area. The secured creditor readily admits, and several other courts have recognized, that there are no loans similar to these loans being made at this time. [Citations omitted.] Thus, the interest rate on loans similar to that at issue to the Debtor's treatment of GECC in its Plan is extremely difficult, and arguably impossible, to ascertain. At a minimum, it could not be determined without the court's adducing substantial testimony regarding what interest rate the creditor would charge on such a loan if it were to make such a loan. Thus, the *Jones* court's goal of reducing transactional and litigation costs is not achieved by applying the coerced loan approach to the commercial real estate loan situation at issue in this case. *In re River Village Associates, supra* at page 138.

The court further writes at page 138 that application of the coerced loan theory in

**640**

cases where there is no market for similar loans effectively eliminates the court's cram down powers. In support it cites *In re Eastland Partners Ltd. Partnership*, 149 B.R. 105 (Bankr.E.D.Mich.1992).

■ We are unpersuaded by the *In re River Village Associates* analysis as to the inapplicability of the coerced loan scenario established by the Third Circuit in *GMAC v. Jones*. On the other hand, this court is persuaded to accept the reasoning of the *GMAC v. Jones* case and we hereby apply the coerced loan approach to cases under Chapter 11 of the United States Bankruptcy Code. Also of applicability to the instant case is the Third Circuit's "rule of practice" concerning those situations where there is an absence of proof concerning a creditor's current rate for a loan of a similar character, amount and duration. The Third Circuit indicated that it would be appropriate for a bankruptcy court to "accept a plan utilizing the contract rate if the creditor fails to come forward with persuasive evidence that its current rate is in excess of the contract rate. Conversely, utilizing the same rebuttable presumption approach, if a debtor proposes a plan with a rate less than the contract rate, it would be appropriate, in the absence of a stipulation, for a bankruptcy court to require the debtor to come forward with some evidence that the creditor's current rate is less than the contract rate." *GMAC v. Jones, supra* at pages 70, 71. Because of a lack of evidence, testimonial or written, presented to this court at the time of the hearing, the court is left in a position where it has no indication as to what rate this particular creditor should anticipate for a loan of similar character, amount and duration. The court, in rendering its decision, will heed the guidance of the Third Circuit and look to the contract rate. The contract between the Debtor and the Movants provided for an interest rate of eleven percent (11%). The offer of interest as embodied in the Plan of Reorganization is at a rate of eight percent (8%). Based upon the reasoning of *GMAC v. Jones*, the court hereby determines that the plan must fail because it does not satisfy the cram down requirements embodied in the Bankruptcy Code at Section 1129(b)(2)(A)(i)(II). The court sustains the objection to the Plan.

■ The Motion to Lift the Automatic Stay will be disposed of by continuing the stay on the condition that a monthly payment shall be paid to the Movant of One Thousand One Hundred One and 36/100 Dollars ($1,101.36), which this court calculates would be the monthly payment if the value of the real estate of One Hundred Six Thousand Seven Hundred Dollars ($106,700.00) was amortized at eleven percent (11%) over twenty (20) years. This amount shall be paid to the Movant within thirty (30) days and every thirty (30) days thereafter.

Also, the Debtor shall keep the premises insured and shall pay all postpetition property taxes within thirty (30) days and continue to pay same as that tax accrues and before penalty. These shall be further conditions of the continuance of the stay.

Upon failure of the Debtor to comply with these conditions, the stay shall terminate upon the filing of a Certification from Movant of such failure.

These conditions shall continue until such time as confirmation is ordered by the court or the case is converted or dismissed.