**William J. WADE, Trustee, Appellant,**

v.

**Nathan BRADFORD and Beverly Bradford, Debtors, Appellees.**

No. 94–7072.

United States Court of Appeals, Tenth Circuit.

Nov. 8, 1994.

Lawrence A.G. Johnson, Tulsa, OK, for appellant.

Robert Inglish, of Inglish & Inglish, Okmulgee, OK, for appellees.

Before MOORE and ANDERSON, Circuit Judges, and BRIMMER,* District Judge.

BRIMMER, District Judge.

Creditor William J. Wade appeals the district court's decision affirming the bankruptcy court's confirmation of a reorganization plan proposed by debtors Nathan and Beverly Bradford. Because a chapter 11 debtor may bifurcate an undersecured creditor's claim and strip the creditor's lien down to the value of the collateral, and because the debtors' plan met the Code's "cram down" requirements, we affirm.[1]

Creditor Wade obtained an in rem state court judgment authorizing foreclosure against debtors' homestead to satisfy a lien in the amount of $30,850.07, together with $2,778.76 in attorney fees and court costs. The collateral, however, only has a value of $15,000.

Debtors filed a chapter 13 bankruptcy petition and submitted a reorganization plan which bifurcated creditor's claim into secured and unsecured portions, stripping the lien

---

* Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

from the unsecured portion of the debt. The bankruptcy court's confirmation of the plan was subsequently reversed, based on *Nobelman v. American Savings Bank,* —— U.S. ——, ——, 113 S.Ct. 2106, 2111, 124 L.Ed.2d 228 (1993), in which the Supreme Court held that chapter 13 prohibits lien stripping if the creditor's claim is secured only by the debtor's principal residence. The case was then converted to chapter 11, and debtors submitted a reorganization plan which again proposed to bifurcate creditor's claim and strip the lien from the unsecured portion.

Upon creditor's objection to the plan, the bankruptcy court held that chapter 11 does not prohibit the stripping of a creditor's lien down to the value of the collateral; that use of the prevailing market interest rate is appropriate; and that the reorganization plan met Code requirements for approving a plan over a creditor's objections. The district court affirmed, and this appeal followed.

On appeal, creditor argues that the bankruptcy court erred in confirming the plan because (1) recent United States Supreme Court authority prohibits the stripping of an undersecured creditor's lien down to the value of the collateral; (2) there is no authority to override state law regarding foreclosure of mortgages; (3) the contract rate of interest should have been applied to creditor's claim; and (4) the plan did not meet Code requirements for approval over creditor's objections. We review the bankruptcy and district courts' conclusions of law de novo. *See Rubner & Kutner, P.C. v. United States Trustee (In re Lederman Enters., Inc.),* 997 F.2d 1321, 1323 (10th Cir.1993).

■ Creditor argues that the United States Supreme Court's decision in *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), prohibits the stripping of his lien. In *Dewsnup,* the Court held that chapter 7 debtors could not use § 506(d) of the Code to strip down a lien on real property to the value of the underlying collateral. Noting the traditional rule that, in liquidation cases, the lien remained with the collateral until foreclosure, the Court found no clear evidence that Congress intended to change the rule. *Id.* at ——, 112 S.Ct. at 778–79.

The Court specifically limited its holding to the facts before it, stating:

> [Section] 506 of the Bankruptcy Code and its relationship to other provisions of that Code do embrace some ambiguities. Hypothetical applications that come to mind and those advanced at oral argument illustrate the difficulty of interpreting the statute in a single opinion that would apply to all possible fact situations. We therefore focus upon the case before us and allow other facts to await their legal resolution on another day.

*Id.* at ——, 112 S.Ct. at 777–78 (citation omitted).

We must determine whether *Dewsnup* prohibits lien stripping in the chapter 11 context as well. As the Court implied, in reorganization cases the traditional rule has been that liens may be stripped down to the value of the collateral securing a creditor's claim. *See id.* at ——, 112 S.Ct. at 779 ("Apart from reorganization proceedings, ... no provision of the pre-Code statute permitted involuntary reduction of the amount of a creditor's lien for any reason other than payment on the debt."); *In re Jones,* 152 B.R. 155, 173 (Bankr.E.D.Mich.1993) (discussing § 461(11) and § 616 of previous Bankruptcy Act, which allowed debtors to strip liens to the value of the underlying property). Thus, in contrast to chapter 7, Congress enacted chapter 11 against a pre-Code background that allowed debtors to strip a creditor's lien.

Nothing in the Code or its legislative history evidences an intent to change this practice. Under such circumstances, *Dewsnup* cautions the courts not to interpret the Code "to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." 502 U.S. at ——, 112 S.Ct. at 779; *see also In re Jones,* 152 B.R. at 173 ("[C]ategorically prohibiting lien stripping in chapter 11 would disrupt established pre-Code law.")

In fact, the express language of the Code's plan confirmation requirements, in conjunction with the structure of chapter 11, militates against an interpretation of § 506 that prohibits the debtor from limiting a creditor's lien to the value of the underlying collateral. Chapter 11 contains a comprehen-

sive set of interrelated provisions regarding the treatment of undersecured creditors.

When a creditor's claim is undersecured, § 506(a) directs that the claim be bifurcated into a secured and an unsecured component. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 239 & n. 3, 109 S.Ct. 1026, 1029 n. 3, 103 L.Ed.2d 290 (1989). If the creditor does nothing more, he holds a secured claim up to the value of the collateral, and an unsecured claim for the remaining amount. 11 U.S.C. §§ 506(a), 1111(b)(1)(A). This allows the creditor to share in the distribution to unsecured creditors, with the concomitant voting power of an unsecured creditor.

To be confirmable over the creditor's objection, the debtor's reorganization plan must pay the creditor the amount of his secured claim and must preserve the creditor's lien "to the extent of the allowed amount of such claim[ ]." 11 U.S.C. § 1129(b)(2)(A)(i)(I). Because the secured claim is equal to the value of the underlying collateral, this provision appears to authorize the debtor to strip the creditor's lien down to the collateral's value. *See In re Jones,* 152 B.R. at 173 ("The Code's legislative history makes clear that the lien to be retained pursuant to § 1129(b)(2)(A)(i) secures only the allowed secured claim, so that a debtor's plan can provide for the invalidation of underwater liens without running afoul of that subsection"); Lee R. Bogdanoff, *The Purchase and Sale of Assets in Reorganization Cases—Of Interest and Principal, of Principles and Interests,* 47 Bus.Law. 1367, 1456–57 (1992).

Alternatively, the creditor may elect to have his claim treated as fully secured. 11 U.S.C. § 1111(b)(2). This means that the creditor relinquishes his right to vote on the plan and to share in the distribution to unsecured creditors, but that the creditor must be paid the full amount of his claim over time, so long as the present value of such payments equals the value of the collateral. *See* 11 U.S.C. § 1129(a)(7)(B); *Boston Post Road Ltd. Partnership v. FDIC (In re Boston Post Road Ltd. Partnership),* 21 F.3d 477, 483 (2d Cir.1994); *680 Fifth Ave. Assocs. v. Mutual Benefit Life Ins. Co. (In re 680 Fifth Ave. Assocs.),* 156 B.R. 726, 731–33 & n. 6 (Bankr. S.D.N.Y.), *aff'd,* 169 B.R. 22 (S.D.N.Y.1993),

*aff'd,* 29 F.3d 95 (2d Cir.1994). Under these circumstances, the creditor retains his lien to the full extent of his claim. 5 *Collier on Bankruptcy* ¶ 1129.03 at 66–67 (15th ed. 1993).

The very existence of this election demonstrates that chapter 11 permits a debtor to strip a creditor's lien down to the value of the collateral. As the court explained in *680 Fifth Avenue Associates:*

> the fact that the § 1111(b) election exists at all presumes that debtors possess the authority under the Code to limit secured claims to the value of the collateral. The election allows an undersecured creditor to opt out of the lien-stripping found in § 1129 in exchange for relinquishing its deficiency claim, retaining its lien for the full amount of its claim, and receiving payments totalling the entire allowed claim and having a present value equal to the secured amount.

156 B.R. at 732 n. 7. Thus, we agree with the majority of courts considering this issue that "*Dewsnup*'s holding cannot be imported into Chapter 11 cases without eviscerating other key provisions and principles of that reorganization chapter." *Dever v. Internal Revenue Service (In re Dever),* 164 B.R. 132, 133 (Bankr.C.D.Cal.1994); *see also In re Jones,* 152 B.R. at 173–74 (discussing congressional intent to permit lien stripping in chapter 11, as demonstrated by legislative history); *In re Butler,* 139 B.R. 258, 259 (Bankr.E.D.Okla.1992) (holding that application of *Dewsnup* to reorganization case would "gut the sum and substance of the reorganization and rehabilitation of debt concept[s]").

■ Creditor also argues that Congress' special concern for home mortgage lenders, as evidenced by the chapter 13 provision discussed in *Nobelman,* should prevent bifurcation of home mortgages in chapter 11 as well. The problem with this argument is that there is absolutely no language in chapter 11 evidencing an intent to afford home mortgage lenders such special treatment. Whereas § 1322(b)(2) expressly prohibits modification of the rights of home mortgage lenders, chapter 11 does not contain a comparable provision. We are without authority to "judicially expand the congressional purpose

'in singling out home mortgages in the Chapter 13 provisions' to include Chapter 11." *In re Kennedy,* 158 B.R. 589, 595–96 (Bankr. D.N.J.1993) (quoting *In re Smith,* 156 B.R. 11, 13–14 (Bankr.D.N.J.1993)).

■ Creditor argues that the bankruptcy court was without authority to modify his state law right to foreclose on the debtors' property and urges us to reverse *Jim Walter Homes v. Spears (In re Thompson),* 894 F.2d 1227 (10th Cir.1990). In *In re Thompson,* we held that the debtor's right to redeem real property before a foreclosure sale gave the estate a sufficient interest in the property to allow it to cure the default, even after a foreclosure judgment was obtained. *Id.* at 1230–31. We see no reason to modify this rule.

In any event, the bankruptcy court is authorized to modify a creditor's state law property rights through a chapter 11 reorganization plan. *See, e.g.,* 11 U.S.C. § 1123(a)(5)(E) (debtor's right to satisfy or modify a lien); 11 U.S.C. § 1123(b)(1) (debtor's right to impair both secured and unsecured claims); *see also In re Kennedy,* 158 B.R. at 596 (concluding that the Code authorizes a chapter 11 debtor to "alter the legal rights of a home mortgage lender who holds a foreclosure judgment against his residence"). Thus, there was no error in modifying creditor's right to foreclose on debtors' property, even after a foreclosure judgment was obtained.

■ Creditor next argues that the bankruptcy court erred in approving the use of the eight percent market interest rate rather than the contract interest rate of ten percent. In *Hardzog v. Federal Land Bank (In re Hardzog),* 901 F.2d 858 (10th Cir.1990), we held that "in the absence of special circumstances, such as the market rate being higher than the contract rate, Bankruptcy Courts should use the current market rate of interest used for similar loans in the region." *Id.* at 860 (footnote omitted). Here, the bankruptcy court found that no special circumstances existed to justify departure from the prevailing market rate, and creditor has not identified any such special circumstances on appeal. Therefore, the bankruptcy court did not err in complying with the requirements of *Hardzog.*

■ Creditor argues that because he was involved in lending for shell home construction, the prevailing market interest rate was actually ten percent. The record, however, does not demonstrate that creditor raised this issue before the bankruptcy court. We will not address an issue raised for the first time on appeal. *Hicks v. Gates Rubber Co.,* 928 F.2d 966, 970 (10th Cir.1991).

■ Finally, creditor argues that the plan should not have been confirmed because he would have received more under a chapter 7 liquidation plan, and because he did not receive the "indubitable equivalent" of his claim. A review of the plan demonstrates that creditor will receive more than he would have under a chapter 7 liquidation. Had debtors' estate been liquidated, creditor would have received the value of his collateral, that is, approximately $15,000, minus the costs of sale, and a pro rata share of any remaining nonexempt property. Upon such liquidation, debtors' liability would have been discharged, and creditor would not be entitled to any future payments on the debt. Under the plan, however, creditor will receive the $15,000 value of the collateral plus proceeds from the sale of certain exempt property and a pro rata share of the debtors' proposed cash infusion over the next forty-eight months. Thus, the requirement that creditor receive more than he would through a liquidation is satisfied.

■ Further, because the debtors' plan satisfied the requirements of § 1129(b)(2)(A)(i), creditor was not entitled to the "indubitable equivalent" of his claims as described in § 1129(b)(2)(A)(iii). These requirements are written in the disjunctive, requiring the plan to satisfy only one before it could be confirmed over creditor's objection.

The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.