**In re Linda J. HENSON, Debtor.**

**Bankruptcy No. 94–03106–W.**

United States Bankruptcy Court,
N.D. Oklahoma.

April 13, 1995.

---

David A. Carpenter, Tulsa, OK, for debtor.

Lawrence A.G. Johnson, Tulsa, OK.

---

**11.** *See Pacor v. Higgins,* 743 F.2d 984 (3d Cir. 1984); *Gardner v. United States (In re Gardner),* 913 F.2d 1515 (10th Cir.1990).

## ORDER DENYING OBJECTIONS TO PLAN (RESERVING ISSUES CONCERNING ATTORNEY FEE)

MICKEY DAN WILSON, Chief Judge.

This contested matter was submitted for decision on stipulations and briefs. Upon consideration thereof, and of the record herein, this Court, pursuant to F.R.B.P. 7052 and 9014, finds, concludes, and orders as follows. Procedural history of the matter is included among "Findings of Fact."

## FINDINGS OF FACT

On October 18, 1994, debtor Linda Jean Henson ("Henson") filed her voluntary petition for relief under 11 U.S.C. Chapter 13. With her petition, Henson filed statements and schedules as required by F.R.B.P. 1007(b)(1). Therein Henson reported disposable income of $1,095.00 per month; real and personal property of a total value of $64,464.00; and liabilities totalling $60,136.03 consisting of secured debts totalling $56,879.44 and unsecured debts totalling $3,256.59. Henson's single largest debt is in the amount of $15,200.00 owing to Mid–State Homes Inc. ("Mid–State"), secured solely by a first purchase money mortgage on Henson's homestead. The homestead, valued at $25,000.00, is also subject to a second mortgage in favor of City Finance of Pryor, Oklahoma, securing a debt of $4,272.09.

With her petition, statements and schedules, Henson also filed her "Chapter 13 Plan" as required by F.R.B.P. 3015(b). The plan called for Henson to surrender one superfluous automobile; to make payments on the first mortgage on her home directly to Mid–States according to the pre-bankruptcy contract (or, in bankruptcy shop talk, "outside the plan"); to make various other payments to various other secured creditors either "outside the plan" or in installments over periods of 25 to 36 months; and to pay an additional $700.00 per month to the Chapter 13 Standing Trustee ("the Trustee") for 38 months, to be distributed by the Trustee to unsecured creditors in full payment of their claims.

Mid–States' interest is in some manner not clear to this Court connected with Jim Walters Homes, Inc. and one William J. Wade, "Trustee" ("Wade"), not to be confused with the Trustee (i.e., the Chapter 13 Standing Trustee) mentioned above. On November 8, 1994, Wade filed an "Objection to Plan" and a "Brief in Support of Objection to Plan." Wade objected to Henson's plan because it did not "require [Henson] to maintain insurance on the mortgaged premises;" did not account for an arrearage owed on the first mortgage debt; did not "provide that the arrearages ... are not subject to discharge and should bear interest at the contract rate of 10%;" and did not provide for attorney fees and interest thereon. The objection was heard at the first confirmation hearing on November 30, 1994. These matters were continued to January 18, 1995.

At the continued confirmation hearing on January 18, 1995, this Court again continued such hearing to February 22, 1995, and instructed Henson and Wade to enter into certain stipulations regarding the issue of interest on arrearages and to file any further briefs before the date of continued hearing. A written memorialization of these orders was filed on January 20, 1995. On January 20, 1995, Wade filed his "Memorandum Regarding Interest Rate to be Applied to Home Mortgage Arrearages." On January 30, 1995, Henson filed her "Brief in Support of Applicable Interest Rate on Home Mortgage Arrearages."

Appended to Wade's "Memorandum ..." is what appears to be a copy of an affidavit by one Herb Clarkson, vice-president of Jim Walter Homes, Inc., predecessor in interest to Mid–State, declaring that an interest rate of 10% is an appropriate market rate for Jim Walter Homes considering the creditor's lower transaction costs in home financing, waiver of down-payment in most instances, and "unusual" practice of financing "the construction of dwellings completed to various stages of completion from a basic shell home to a nearly completed dwelling." Appended to Henson's "Brief ..." are copies of various articles and reports indicating recent interest rates in this area, which commonly run between 8–9%.

On February 3, 1995, the parties filed their "Stipulation[s]." The parties stipulate that

"[t]he arrearage arises from the note and mortgage held by [Wade] ... and is the basis for the secured claim on the arrearage," stip. p. 1 ¶ 1. The parties further stipulate that the arrearage claim consists of $164.90 for one unpaid installment on the home mortgage debt, $444.00 for insurance payments, and a $5.00 late fee, for a total of $613.90, exclusive of attorney fees, stip. pp. 1–2 ¶¶ 2–4. Although they do not expressly so stipulate, the parties appear to agree that the mortgage requires Henson to maintain insurance on the mortgaged premises; and that paragraph 8 of the mortgage further provides as follows:

> It is further covenanted the Mortgagee may, at his option, advance moneys for the payment of insurance and taxes (including assessments) that should have been made by Mortgagor hereunder in order to protect the lien or security hereof, and Mortgagor agrees without demand to forthwith repay such money advanced by the Mortgagee, *which amount shall bear interest at the rate of 10% per annum until paid and shall be added to the debt;* provided, however, no payment by Mortgagee of any such moneys shall be deemed a waiver of Mortgagee's right to declare the principal sum due hereunder by reason of the default or violation of Mortgagor in any of his covenants hereunder,

Wade's memorandum p. 2 (emphasis original in memorandum). The parties also request "that the court rule on the allowed amount of the attorney fees as a separate issue," stip. p. 1 ¶ 3.

Meanwhile, on January 31, 1995, Henson filed an "Amended Chapter 13 Plan." The amended plan stated the amount of arrears to be $619.90; proposed to pay this amount plus interest at an alleged market rate of 8%, in 16 monthly payments of $40.98 each; and made various other adjustments increasing the payments to the Trustee to $970.00 for 44 months, to be distributed by the Trustee to unsecured creditors in full payment of their claims. On February 1, 1995, the Court ordered specified distributions to creditors to begin without waiting for resolution of Wade's objection and confirmation of the plan.

On February 9, 1995, Wade filed his "Objection to Third Amended Plan," which refers to Wade's previous brief(s) herein. Only two plans have been filed so far in this case, an original and a first amended plan; but Wade's objection is taken to apply to whatever version of Henson's plan is current. Wade's "Objection to Third Amended Plan" also asks the Court "to apply the market rate ... at 10%." Considering the history of this dispute, the term "market rate" was presumably meant to read "contract rate;" but the Court observes that Wade also argues that his "market rate for a coerced loan is 10%," Wade's memorandum p. 3.

At continued confirmation hearing on February 22, 1995, the Court took the matter under advisement.

Any "Conclusions of Law" which ought more properly to be "Findings of Fact" are adopted and incorporated herein by reference.

### CONCLUSIONS OF LAW

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (L), (O), 11 U.S.C. §§ 1322(b)(2), 1325(a)(5)(ii).

The issue is what interest rate should be applied to arrearages, on a debt secured only by a mortgage on the debtor's principal residence, to be cured by instalment payments over the term of a Ch. 13 plan. The debtor-mortgagor Henson proposes a market rate of interest figured at 8%; the mortgagee Wade argues that the correct market rate should be 10%, but in any event proposes a contract rate of 10%.

This Court determines that the market rate in this area for loans of this type is approximately 8%, even though Wade, Jim Walters Homes, Mid–States, or all of them, may be charging their customers a higher rate. For purposes of this case, this Court fixes the appropriate market rate at 8% precisely.

In *In re Hardzog*, 901 F.2d 858, 860, (10th Cir.1990), the Court of Appeals for this Circuit "h[e]ld that in the absence of special circumstances, such as the market rate being higher than the contract rate, Bankruptcy Courts should use the current market rate of

interest used for similar loans in the region." This holding was reaffirmed in *Wade v. Bradford,* 39 F.3d 1126, 1130 (10th Cir.1994). Here, the Court has found the market rate to be 8%, which is lower than the contract rate of 10%. The appropriate interest rate is therefore the market rate of 8%.

The mortgagee Wade argues that the clear command of *Hardzog* and *Bradford* to use a market rate of interest is somehow impeached by U.S. Supreme Court rulings in *Nobelman v. American Savings Bank,* 508 U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) and *Rake v. Wade,* 508 U.S. ——, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). *Nobelman* held that a debt secured only by a mortgage on debtor's principal residence cannot be bifurcated into a secured claim (which in somewhat oversimplified terms equals the value of collateral) and an unsecured claim (equal to any remaining deficiency) under 11 U.S.C. § 506(a) because of a special exception to § 506 occurring in 11 U.S.C. § 1322(b)(2). But *Nobelman* was careful to point out that, in areas other than bifurcation, a home mortgagee's debt and mortgage may be "affected" in bankruptcy, 508 U.S. at ——, 113 S.Ct. at 2110, 124 L.Ed.2d p. 235. The issue now before this Court has nothing to do with bifurcation under § 506(a). *Rake v. Wade* held that a mortgagee is entitled to interest on arrearages being cured under a Ch. 13 plan. But *Rake v. Wade* did not specify any rate of interest. *Rake v. Wade* did observe that the purpose of interest is to provide secured creditors with the present value of their claims, 508 U.S. at ——, 113 S.Ct. at 2192, 124 L.Ed.2d p. 433. This indicates a market rate of interest, rather than a more or less arbitrary (or even punitive) contract rate. To the extent that *Nobelman* and *Rake v. Wade* have any effect on *Hardzog* and *Bradford,* the Supreme Court cases seem to strengthen the Court of Appeals rulings, not to weaken them.

This is not just an exercise in legal technicalities. Wade's mortgage debt is greatly oversecured, so that Wade is assured of recovering the original amount of his mortgage debt plus any reasonably likely additions thereto, such as insurance payments, attorney fees and interest, whether by debtor's payments or by eventual foreclosure. But there is a second mortgage in favor of another secured creditor, and there are various other creditors, secured and unsecured, waiting in line for their own debts to be paid under Henson's plan. As Wade aggrandizes his own recovery by adding charges such as high rates of interest, he worsens the position of other creditors down the line. Henson's present plan will give Wade all he has justly coming to him, without either shorting other creditors or unduly deferring Henson's own "fresh start" on completion of her plan. This Court is satisfied that such result is in conformity with the intent of Congress and the dictates of the Court of Appeals of this Circuit and the Supreme Court.

The parties have asked the Court to "rule on the allowed amount of the attorney fees as a separate issue." The Court will reserve the amount of the attorney fee, and the issues of whether the attorney fee should bear interest and if so at what rate, for separate determination.

Accordingly, Wade's objections to confirmation on the ground that a higher interest rate, either a market rate in excess of 8% or the contract rate of 10%, should be applied to arrearages on a home mortgage debt to be repaid by installments under a Ch. 13 plan, must be and are hereby denied; provided, however, that the issues of the amount of attorney fees for enforcement of the contract, whether such fees should bear interest, and if so at what rate, are not determined herein, but are reserved for separate determination at a later time.

AND IT IS SO ORDERED.