In re Clarence L. (I.O.) HARDZOG; Katy Lou Hardzog, Debtors.

Clarence L. (I.O.) HARDZOG; Katy Lou Hardzog, Appellees,

v.

The FEDERAL LAND BANK OF WICHITA, Appellant.

Nos. 89–6064, 89–6065.

United States Court of Appeals, Tenth Circuit.

April 19, 1990.

B.J. Brockett, Anthony L. Jackson, and J. Mark Spaeth of B.J. Brockett, Inc., P.C., Oklahoma City, Okl., on the briefs, for appellees.

G. Blaine Schwabe, III, J. Eric Ivester, and Rob F. Robertson of Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, Okl., on the briefs, for appellant.

Before SEYMOUR, MOORE, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

This appeal was set for oral argument during the March Term of this court. Counsel were unable to be present due to blizzard conditions. This court has therefore examined the briefs and appellate record and has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

This appeal concerns the validity of a Bankruptcy Chapter 12 debt adjustment plan.

The significant facts are neither complex nor disputed. Appellant (Bank) made a loan to Appellees (Debtors) and secured this debt with a mortgage upon Debtors' real property. After paying on this loan for approximately twelve years, Debtors commenced a Chapter 12 Bankruptcy proceeding. At that time, the mortgage called for approximately eighteen years of payments at 12.5 per cent per annum. The unpaid principal amounted to approximately $193,000. The total amount of the Bank's allowed claim was approximately $204,000.[1] The fair market value of the real property was approximately $230,000. The debtors filed their debt adjustment plan and proposed to pay the amount of the allowed claim in fifteen years[2] with inter-

---

1. Interest was allowed at the contract rate up to the effective date of the plan.

2. The parties do not present any issues to this court concerning the fifteen-year repayment, nor the effect thereof, if any, upon the subsequent question of present value.

est at 7.5 per cent per annum. The Bank objected to the plan and asserted it was entitled to interest at 12.5 per cent per annum, which was the agreed upon rate contained in the contract.

The Bankruptcy Court ultimately approved a modified plan, which called for payment of the allowed claim in fifteen years at an annual interest rate of ten per cent. The Bankruptcy Court established the interest rate by computing what it determined to be the Bank's cost of funds.[3] It set the cost of Bank's funds at 9.3 per cent and the cost of Bank's risk factor at .7 per cent, thus yielding a total interest rate of 10 per cent.

Bank appeals, asserting: (1) the debt adjustment plan does not propose to pay the value of its claim; (2) if an interest rate other than the contract rate is applied, the Bank would then be deprived of its property without just compensation; and (3) numerous arguments contending that the Bankruptcy Court either should not have used the cost of funds approach or that the Bankruptcy Court miscomputed the cost of funds.

A broad, loose and generalized summary of Chapter 12 of the Bankruptcy Code will help place Bank's arguments into perspective. Generally speaking, an eligible family farmer may obtain relief from debts and continue to reside upon and operate the farm if the Bankruptcy Court approves a debt adjustment plan. The debt adjustment plan may affect the rights of the holders of the debt. After the debt adjustment plan has been approved, the debtor pays the trustee who in turn pays the holders of the debt. To be confirmed, a debt adjustment plan must meet certain requirements specified by the Bankruptcy Code. One of these requirements is that the holder of an allowed claim must receive proper-

ty under the plan which has a value of no less than the amount of its allowed claim.[4]

Bank contends it will not receive the allowed amount of its claim as it will not receive the agreed upon interest rate. Stated somewhat differently, Bank contends it cannot receive the value of its claim unless it receives its contract rate of interest.[5]

What becomes immediately obvious is that the Bankruptcy Court must determine the present value of a series of future cash flows; otherwise it cannot determine whether Bank will receive less than the allowed amount of the claim. This necessarily dictates that the Bankruptcy Court must arrive at a discount factor or interest rate. Once the unpaid principal, due date, payment periods, and payment amounts are determined, the problem still cannot be solved until the interest rate or discount factor is determined. Only with all of these figures known does the solution then become one of mathematical computation. The precise question before us is how to determine the interest rate to be applied to the formula.

Congress, in enacting Chapter 12, gave us no guidance in how to determine the applicable interest rate.

The Bankruptcy Code contains other provisions setting forth a present value requirement.[6] Courts, in interpreting these similar statutes, have not been uniform in their results. As one authority on Bankruptcy has stated:

> While the cases considering the issue are fairly uniform in agreeing that a market rate of interest is appropriate, the cases differ drastically in their interpretation of how a "market rate" is to be determined.

---

**3.** The Bankruptcy Court's decisions in this case are reported at 74 B.R. 701 (Bankr.W.D.Okla. 1987) and 77 B.R. 840 (Bankr.W.D.Okla.1987).

**4.** 11 U.S.C. § 1225(a)(5)(B)(ii) provides that the holder of each secured claim shall receive "the value, as of the effective date of the plan, of property to be distributed ... under the plan on account of such claim is not less than the allowed amount of such claim."

**5.** It is important to note that Bank is an over-secured creditor, which is to say that its collateral has a value in excess of the amount of the allowed claim.

**6.** *See* 11 U.S.C. §§ 1129(a)(9)(B)(i) and (C), 1129(b)(2)(A)(i)(II) and 1325(a)(5)(B)(ii).

5 *Collier on Bankruptcy* § 1225.03 at 1225–21 (1989).

A review of court decisions determining an appropriate interest rate under Chapter 12 likewise reveals diverse results which include using the interest rate charged by the secured creditor;[7] using the legal rate on judgments in the absence of evidence concerning market rates;[8] using the contract rate after determining it was below market;[9] and of course the case now before this court, which holds a cost of funds approach to be proper.

The Eighth Circuit has addressed the problem before us in the case of *United States v. Doud,* 869 F.2d 1144 (8th Cir. 1989). This decision endorsed the "market rate" approach while approving a method of determination of the "market cost" by first determining the rate of a risk-free loan, such as the yield on treasury bonds, and adding thereto two per cent as a risk factor. In short, this approach determines an appropriate interest rate, which consists of a "risk-free rate" plus additional interest to compensate a creditor for risks posed by the plan. We cannot agree that this represents a "market rate." The advantage to this approach is a simplified and easy method of interest rate determination. The disadvantage is that this approach will probably not accurately reflect the market, and thus may unduly penalize the lender or borrower.

Courts are not well situated to craft and determine interest rates. Judges are neither bankers nor lenders and do not have the expertise to set interest rates. A lender, in establishing interest rates to be charged to a borrower, will consider and utilize many factors, including what the competition charges, its cost of funds, the condition of the local economy, its overhead, the character of the borrower, the capacity of the borrower to repay, the value of the collateral, the costs of servicing the loan, the status of the lender's loan portfolio, the lender's ratio of loans to assets, its liquidity, and a host of other factors. We therefore hold that a "cost of funds" approach should not be utilized by Bankruptcy Courts in establishing the appropriate interest factor. A "cost of funds" approach is not susceptible of accurate determination without complex problems of proof and may not result in fairness.

Considering that most courts are utilizing a market rate approach and further considering that courts are well equipped to determine market rates, we hold that in the absence of special circumstances, such as the market rate being higher than the contract rate,[10] Bankruptcy Courts should use the current market rate of interest used for similar loans in the region. Bankruptcy Courts, counsel, lenders, and borrowers should have a familiarity with current interest rates on like-type loans and when a dispute arises, the market rate should be easily susceptible of determination by means of a hearing where each party is given the opportunity to submit evidence concerning the current market rate of interest for similar loans in the region. We are persuaded to adopt this approach by two additional factors. Chapter 12 is predicated upon the theory that the lender is making a new loan to the debtor. It therefore follows that the most appropriate interest rate is the current market rate for similar loans made in the region at the time the new loan is made. This approach should also tend to assure that both the lender and the debtor are treated fairly with neither receiving an advantage over the other.

This decision renders moot the remaining issues raised by Bank.

The decision of the District Court affirming the decision of the Bankruptcy Court is therefore REVERSED, and this case is remanded for such other and further pro-

**7.** *In re Citrowske,* 72 B.R. 613 (Bankr.D.Minn. 1987).

**8.** *In re Fleshman,* 82 B.R. 994 (Bankr.W.D.Mo. 1987).

**9.** *In re Turner,* 87 B.R. 514 (Bankr.S.D.Ohio 1988).

**10.** We deliberately reserve until the issue is properly before us, a definition of the parameters of "such special circumstances."

ceedings to be conducted in accordance with the holdings of this opinion.