**In re Gregory John RIENHARDT, Laurie Ann Rienhardt, Debtors.**

**Bankruptcy No. 95–61352.**

United States Bankruptcy Court, N.D. New York.

Sept. 28, 1995.

Bodow, Antonucci & Fintell, LLP, Syracuse, New York (Wayne Bodow, of counsel), for Debtors.

Deily, Testa & Dautel, Albany, New York (Jonathan D. Deily, of counsel), for Chrysler Credit Corporation.

Mark Swimelar, Chapter 13 Trustee, Syracuse, New York.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

This matter comes before the Court for hearing on the motion of Gregory John Rienhardt and Laurie Ann Rienhardt ("Debtors") seeking confirmation of their Chapter 13 Plan and the objection of Chrysler Credit Corporation ("Chrysler") to Debtors' proposed treatment of its allowed secured claim pursuant to § 1325(a)(5)(B)(ii) of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"). The original confirmation hearing was held on June 28, 1995 and adjourned to July 26, 1995, to allow the Debtors an opportunity to submit a memorandum of law. Following oral argument on July 26, 1995, the matter was submitted for decision on August 2, 1995.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1), (b)(2)(L) and (O).

### FACTS

On April 21, 1995, Debtors filed a voluntary petition ("Petition") seeking relief pursuant to Chapter 13 of the Code. The "Notice of Hearing on Confirmation of Chapter 13 Plan" ("Notice"), prepared by the Chapter 13 trustee, was sent to all creditors listed in the Petition, on May 10, 1995. According to the Notice, a copy of the Debtors' Plan ("Plan") was attached thereto.

Prior to filing their Petition, on or about December 24, 1993, Debtors entered into a contract with Chrysler in order to finance the purchase of a 1990 Chevrolet Corsica ("Vehicle"). Both parties agree that the contract provided for the financing of $7,124 at an interest rate of 17.99% per annum. Debtors allege that the contract was for 48 months (*see* Memorandum of Law, filed on behalf of Debtors on July 25, 1995); Chrysler alleges it was for 60 months (*see* Post–Hearing Memorandum of Law filed on behalf of Chrysler on August 3, 1995). (The term of the contract is not critical to the issue now before the Court, however.)

In their Petition, Debtors estimated that $7,113.82 was owed to Chrysler as of the date they filed their Plan. Debtors placed a value of $5,162.50 on the Vehicle, based on an average of the trade-in and wholesale value as listed in the April 1995 edition of the N.A.D.A. Official Used Car Guide. Debtors' Plan proposes to pay Chrysler 9% interest on the secured portion of its claim in the amount of $5,162.50 over a period of 33 months.

Chrysler objects to the confirmation of the Debtors' proposed Plan, arguing that the Plan fails to provide Chrysler with the present value of its allowed secured claim pursuant to Code § 1325(a)(5)(B)(ii). Chrysler asserts that it is entitled to receive the contract rate of interest absent proof of a different market rate.

### DISCUSSION

In Chapter 13, a debtor is entitled to retain property in which a creditor has a security interest, over the objection of said creditor, as long as the plan provides that the creditor retains a continuing lien on the property over the course of the plan, and "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B). Known as a "cramdown," Code § 1325(a)(5)(B)(ii) "effectively coerces a new extension of credit in which the creditor is required to assume not only the cost of capital over the deferral period but also the cost of sustaining the lending relationship over that period." *General Motors Acceptance Corp. v. Jones*, 999 F.2d 63, 67 (3d Cir.1993). In lieu of distribution of the property itself and to compensate the creditor for the delay in repayment, the Code requires that the debtor pay the "present value" of the future payments that the creditor is to receive pursuant to the Chapter 13 plan.

In order to ensure that Chrysler receives "present value," the Court must determine and approve a discount factor or interest rate to be paid by the Debtors to Chrysler over the life of the plan. *See In re Mellema*, 124

B.R. 103, 105 (Bankr.D.Colo.1991), citing *In re Hardzog*, 901 F.2d 858 (10th Cir.1990). While the Code provides no guidance in determining the appropriate interest rate in a present value analysis, various approaches have been applied by the courts. *See In re River Village Associates*, 161 B.R. 127, 135–136 (Bankr.E.D.Pa.1993), *aff'd* 181 B.R. 795 (E.D.Pa.1995), (listing the (1) coerced loan approach, (2) cost of funds approach, (3) risk-free approach, (4) contract rate, (5) judgment rate, and (6) treasury bill rate.) [1]

In the matter *sub judice*, the Debtors have proposed an interest rate based on the New York State judgment rate of 9%. Chrysler contends that the Court should use the coerced loan approach as advocated in *Jones, supra*, 999 F.2d at 70–71 and apply the contract rate of 17.99%. The court in *Jones* held that the rate of interest under Code § 1325(a)(5)(B)(ii) should be that which the secured creditor would charge for a loan similar in character, amount and duration to that which the creditor is being required to make under the debtor's plan. *Id.* at 70. The court in *Jones* went on to indicate that "[w]e believe it would be appropriate for bankruptcy courts to accept a plan utilizing the contract rate if a creditor fails to come forward with persuasive evidence that its current rate is in excess of the contract rate." *Id.* at 70–71.[2] Chrysler contends that with respect to an automobile loan, the contract rate, in fact, is likely to be lower than the current market rate given that the car was newer and the equity cushion greater when originally sold, and a debtor's creditworthiness is likely to have been higher when the loan was first made than it would be after having filed a petition in bankruptcy.

The Second Circuit Court of Appeals to date has not addressed the specific issue now before this Court. The Court has considered all the various approaches and the circumstances in which they were applied. The Court concurs with the view taken by Circuit Judge Brorby that "Courts are not well situated to craft and determine interest rates. Judges are neither bankers nor lenders and do not have the expertise to set interest rates." *Hardzog, supra*, 901 F.2d at 860. In the context of a Chapter 13, the problem is further complicated by the need to streamline the confirmation process. In this regard, it is appropriate that the Court provide both debtors and creditors with some sort of guidance in an effort to minimize objections such as the one now confronting it.

The Debtors rely largely on three cases in arguing that the New York State judgment rate is the appropriate present value factor to use for cramdown purposes, namely, *In re Klein*, 10 B.R. 657 (Bankr.E.D.N.Y.1981); *In re Clark*, 168 B.R. 280 (Bankr.W.D.N.Y. 1994), and *In re DeMaggio*, 175 B.R. 144 (Bankr.D.N.H.1994). *Clark* involved Chapter 13 debtors whose plan proposed to apply the New York State judgment rate of 9% to unpaid taxes owed to the City of Rochester on the debtors' residence, rather than the 18% rate fixed by local law. The court was concerned with debtors being able to save their home and also recognized that there was an interest-on-interest component to the City's claim. There was no contract rate for the court to consider and no market rate to examine. The court concluded that the statutory judgment rate of 9% was appropriate.

*DeMaggio* also involved a claim against the debtor's residence based on unpaid real estate taxes, as well as unpaid public assistance taxes, owed to the Town of Norwood. Debtors herein refer the Court to a statement made in *DeMaggio* that "[i]t is important to remember that the rate of interest does not stem from any prebankruptcy contractual undertakings by the debtor with the secured creditor ..." *DeMaggio, supra*, 175 B.R. at 150. While described by the Debtors as the court's *holding*, the statement was actually *dicta* and was simply providing an overview

---

**1.** Although not mentioned in the court's discussion in *River Village*, at least one bankruptcy court has seen fit to set the rate by local rule in Chapter 13 cases "for administrative, judicial and economic convenience as one which reflects the time value of money as well as existing market conditions." *See In re Wilmsmeyer*, 171 B.R.

61 (Bankr.E.D.Mo.1994) (applying standard discount rate of prime plus 3½%).

**2.** The court declined to adopt the contract rate of interest as a cap on the required discount rate as had been suggested by the courts in *Hardzog* and *Mellema*. *See Jones* at 71, n. 11.

of the facts before the court, which did not include a consensual contract between the debtor and the Town. In fact, the court went on to state, "Courts are generally in agreement that an interest rate to compute present value must be responsive to current economic conditions." *Id.* The court in *De-Maggio* concluded that it would apply the Federal judgment rate of 2.55% to the claim post-petition under Code § 506(b) as the Town was oversecured and would apply a rate of 7.68% post-confirmation pursuant to Code § 1325(a)(5)(B). The latter rate was calculated using a riskless rate of 6.68%[3] and a risk factor of 1%, noting that the Town had a substantial cushion of equity to protect itself and any risk was, therefore, minimal.

Both cases are clearly distinguishable from that *sub judice.* In the matter presently before the Court, the claim is not for delinquent taxes, and the secured property is not the Debtors' residence. Chrysler is not oversecured,[4] and the court is not being asked to determine the post-petition rate of interest pursuant to Code § 506(b). Furthermore, unlike either *Clark* or *DeMaggio*, there is a contract rate and, arguably, a market rate for the Court to consider in determining the appropriate rate of interest for present value.

The court in *Klein,* the third case on which Debtors rely, was confronted with a situation factually similar to that presently before this Court. In *Klein* the Chapter 13 debtors sought to cramdown the secured claim of General Motors Credit Corporation, proposing to pay 12% over the term of their plan. The consumer credit contract for the purchase of the automobile in question included an interest rate of 19.56%. While acknowledging that the legislative history indicated a presumption that the contract rate was to be used in determining present value, the court indicated that most of the reported decisions had declined to use the contract rate because of the profit factor included therein. *Klein,*

*supra,* 10 B.R. at 661. The court concluded that the appropriate rate was an average of the contract rate and the New York State judgment rate of 6% and fixed the discount rate at 12%. *Id.* at 662.

Under the court's analysis in *Klein,* the Debtors herein would be required to provide for payments to Chrysler at the rate of approximately 13.5%, the average of the contract rate and the New York State judgment rate. Instead, they have proposed simply to apply the New York State judgment rate of 9% and to ignore the contract rate of 17.99%. However, this Court is persuaded that the calculation proposed by the court in *Klein* is arbitrary, and while convenient, does not place Chrysler in the same economic position it would have been in if the relationship with the Debtors had been terminated and it had been allowed to repossess the Vehicle or if Debtors had proposed to pay Chrysler the full amount of its allowed secured claim upon confirmation of the Debtors' Plan.

Although Chrysler may have preferred to repossess the Vehicle or to receive full payment on its claim upon confirmation, Code § 1325(a)(5)(B) denies it that right and requires it to accept repayment over the life of the Debtors' Plan. Chrysler is compelled to extend credit and to sustain its relationship with the Debtors arguably well beyond the period contemplated in the original contract. The Court concurs with Circuit Judge Stapleton that "only by compensating the secured creditor at a rate it would voluntarily accept for a loan of similar character, amount and duration can the creditor be placed in the same position he would have been but for the cramdown." *Jones, supra,* 999 F.2d at 67.

The facts in *Jones*[5] are similar to those herein in that the debtors were seeking to retain possession of their vehicles in which the creditor was undersecured. The court concluded that it would allow the debtors to

---

3. U.S. Government five year bond rate.

4. The court in *Mellema* in *dicta* stated that in the situation in which a creditor is fully secured and not subject to cramdown, the appropriate rate to be applied is the contract rate rather than a higher market rate. *See Mellema, supra,* 124 B.R. at 107.

5. *Jones* actually involved two separate Chapter 13 cases with a similar question of law regarding the rate of interest to be applied in determining present value.

use the contract rate unless the creditor submitted proof that the market rate was higher. A similar conclusion was reached in *United Carolina Bank v. Hall,* 993 F.2d 1126 (4th Cir.1993); *Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427 (6th Cir.1982); *Mellema, supra,* 124 B.R. 103; *In re Cassell,* 119 B.R. 89 (W.D.Va.1990). All of these cases involved Chapter 13 debtors who, in order to retain certain personal property, whether a motor vehicle or mobile home, were required to provide for present value using the market rate of interest, i.e. that currently being charged by the creditor in the regular course of its business for loans similar in character, amount and duration to the loan being coerced in the cramdown under Code § 1325(a)(5)(B).[6] The fact that these courts elected not to simply apply the contract rate outright comports with the legislative process leading to the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984. At that time, Congress elected to reject an amendment that would have required the application of the contract rate of interest in determining present value pursuant to Code § 1325(a)(5)(B)(ii). *See Matter of Richards,* 106 B.R. 762, 765 (Bankr.M.D.Ga.1989), citing 5 COLLIER ON BANKRUPTCY, ¶ 1325.06[4][b][iii][B] (15th ed. 1989).

 Under the circumstances presently before it, the Court concludes that the market rate of interest is most appropriate.[7] The Court also agrees that in the absence of evidence to the contrary, the contract rate is presumed to accurately reflect the market rate to be used in determining present value in the situation where the collateral is a motor vehicle.[8] Sales of motor vehicles usu-

ally involve short term contracts in which one would not anticipate a significant change in the market rate of interest during the term of the contract as compared with mortgages on real property which usually extend for a period in excess of ten years. In this case, less than one and a half years had elapsed between the sales contract with Chrysler and the date Debtors filed their Petition, making it appropriate to require the Debtors to provide for a rate of 17.99% in their Plan. However, the Court wishes to emphasize that Chrysler is entitled to present evidence that the market rate is actually higher than the contract rate and should be applied to the "new loan" being proposed in the Plan.

By concluding that the market rate is appropriate in determining present value under Code § 1325(a)(5)(B), it is hoped that objections to Chapter 13 plans based on the interest rate to be applied to the amount of the creditor's allowed secured claim will be eliminated, expediting the confirmation process.

Based on the foregoing, it is hereby

ORDERED that the confirmation of the Debtors' Plan is denied, and it is further

ORDERED that Debtors may, on or before October 16, 1995, file an amended plan in compliance with the Decision herein along with notice of the confirmation hearing on the amended plan. Failure to file such an amended plan and notice it for a confirmation hearing shall result in the entry of an Order dismissing the within Chapter 13 case, without further notice or hearing.

---

**6.** In *Mellema* and *Hall* the courts considered the fact that the contract rate was lower than the market rate "special circumstances" warranting application of the contract rate as a cap on the rate of interest debtors need include in their plan for purposes of providing present value pursuant to Code § 1325(a)(5)(B)(ii).

**7.** The Court's conclusion is limited to claims involving a security interest in personal property such as motor vehicles where there is a market for such consumer loans and interest rates are often published or advertised, providing debtors, as well as the court, with an appropriate starting point in any analysis. This is to be distinguished

from the situation in *River Village* in which the creditor held a security interest in an apartment complex, and the court concluded that it could not apply the coerced loan approach to a commercial real estate loan as there was no market for similar loans. *River Village, supra,* 161 B.R. at 138.

**8.** At oral argument, Chrysler's counsel alluded to a current market rate of interest of 18% for a similar loan but offered no evidence to support his assertion, apparently finding the contract rate of 17.99% acceptable.