**Melvin J. KOOPMANS and Bonnie G. Koopmans, Appellants,**

v.

**FARM CREDIT SERVICES, Farm Credit Services of Mid–America ACA, Appellee.**

**No. 3:95–CV–628 RM.**

United States District Court, N.D. Indiana, South Bend Division.

April 17, 1996.

R. William Jonas, Jr., Hammerschmidt Amaral and Jonas, South Bend, IN, for appellants.

Jere L. Humphrey, Kizer and Neu, Plymouth, IN, Mark B. Wagner, Kizer and Neu, Bremen, IN, for appellee.

Paul R. Chael, Trustee, Crown Point, IN.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Melvin and Bonnie Koopmans filed a voluntary petition in bankruptcy under Chapter 12 of the Bankruptcy Code. Their amended Chapter 12 plan sought to repay the debt owed to Farm Credit Services, a secured creditor, pursuant to the "cramdown" provisions of 11 U.S.C. § 1225(a)(5)(B)(ii). Farm Credit Services objected, contending that the interest rate proposed by the debtors was to low and did not provide it with the present value of its allowed claim as required by § 1225(a)(5)(B). The bankruptcy court agreed, and declined to confirm the plan. This appeal followed. For the following rea-

sons, the court affirms the bankruptcy court's judgment.

The facts are not disputed. On September 28, 1976, the Koopmans borrowed $94,000.00 from The Federal Land Bank of Louisville, Farm Credit Services' predecessor. The debt was evidenced by a promissory note and secured by a first mortgage on the Koopmans' farm, which was valued at $180,000. The note had an interest rate of 8.75% per annum, and a maturity date of March 1, 2012.

When the second mortgage holder filed an action to foreclose on the real estate, *see United States v. Koopmans,* No. 3:94–CV–402 (N.D.Ind.), the Koopmans filed a voluntary petition under Chapter 12 of the Bankruptcy Code. The Koopmans thereafter submitted a plan for payment of their debts, which included a proposal to repay Farm Credit Services under 11 U.S.C. § 1225(a)(5)(B)(ii). Pursuant to their amended plan's terms, the Koopmans proposed to pay Farm Credit's claim (which as of November 1, 1994 totaled $100,450.00) over a period of 20 years at a fixed annual interest rate of 7.5%, with the new maturity date being December 31, 2014. Farm Credit Services objected to the proposed interest rate and to confirmation of the debtors' plan.

After hearing evidence from local lenders relating to the current rate of interest being charged in the area for similar loans, the bankruptcy court held that an appropriate interest rate under § 1225(a)(5)(B)(ii) would be the prime rate plus a 1.5% enhancement for risk. The court accordingly declined to confirm the Koopmans' amended Chapter 12 plan.

On appeal, the Koopmans contend that the bankruptcy court erred as a matter of law in using the prime rate as the basis of its interest calculation, and that its imposition of a 1.5% risk enhancement was clearly erroneous. They contend that *In re Snider Farms, Inc.,* 83 B.R. 977 (Bkrtcy.N.D.Ind.1988), is controlling in this case and dictated the use of an interest rate based on the government obligation (or bond) rate in determining what interest rate should be paid to an oversecured creditor such as Farm Credit Services. The Koopmans argue that by using the higher prime rate, the court: (1) created a split of authority within the district contrary to the doctrine of "intra-court comity"; (2) penalized the debtor by giving Farm Credit Services more than it would have received under the original contract had the Koopmans not filed for bankruptcy; and (3) failed to consider what was in the best interest of the unsecured creditors.

 How a bankruptcy court determines the interest rate under the "cramdown" provisions of 11 U.S.C. § 1225(a)(5)(B)(ii) is a question of law subject to *de novo* review. *General Motors Acceptance Corp. v. Jones,* 999 F.2d 63, 66 (3rd Cir.1993) (interpreting identical provision under Chapter 13, 11 U.S.C. § 1325(a)(5)(B)(ii)); *see also In re Fowler,* 903 F.2d 694, 696 (9th Cir.1990) ("The determination of what factors to apply in a valuation calculation pursuant to 11 U.S.C. § 1225 is an interpretation of a statute which is reviewed *de novo.*"); *In re Patterson,* 86 B.R. 226, 227 (9th Cir. BAP 1988). How the court applies the relevant factors in a particular case is a question of fact reviewed under the clearly erroneous standard. *In re Fowler,* 903 F.2d at 696.

██ 11 U.S.C. § 1225(a)(5)(B)(ii) provides in relevant part:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

\* \* \* \* \* \*

(5) with respect to each allowed secured claim provided for by the plan—

\* \* \* \* \* \*

(B)(ii) the value, as of the effective date of the plan, of property to be distributed by the … debtor under the plan on account of such claim is not less than the allowed amount of such claim. . . .

This provision is commonly known as a "cramdown" provision because it allows for confirmation of the debtor's payment plan over a secured creditor's objection, effectively forcing the creditor to continue a lending relationship "even if [it] would prefer to repossess and liquidate the property as it would be entitled to do in the absence of a

bankruptcy filing", and allows the debtor to retain possession of the property in which the secured creditor has an interest. *General Motors Acceptance Corp.*, 999 F.2d at 66.

In exchange for giving the debtor a right to continue possession of the property, § 1[2]25(a)(5)(B) directs two things: (i) the secured creditor shall retain a continuing lien on the property; and (ii) the secured creditor shall receive from the debtor "the value, as of the effective date of the plan, of such property to be distributed under the plan on account of such claim [which shall be] not less than the allowed amount of such claim." 11 U.S.C. § 1225(a)(5)(B)(ii).

*Id.* Unfortunately, the statute is silent as to how the value of the "property to be distributed under the plan" (the deferred payments) should be determined. Bankruptcy courts were thus left to fashion their own methods, with varying results.

While there appears to be a consensus that present value should be determined by applying a "market rate" approach, the courts do not agree on how to determine the relevant "market rate." Some courts use a "cost of funds" approach that is "based on the rate at which the secured creditor borrows money, on the assumption that the secured creditor can replace the money tied up in the bankruptcy proceedings and then make new loans to consumers at the then prevailing rates in that market." *United Carolina Bank v. Hall*, 993 F.2d 1126, 1130 (4th Cir. 1993); *see, e.g., In re Fowler*, 903 F.2d at 697–698; *United States v. Doud*, 869 F.2d 1144, 1146 (8th Cir.1989); *Matter of Jordan*, 130 B.R. 185, 192 (Bkrtcy.D.N.J.1991). Others use a rate that reflects the debtor's cost

of getting a loan. *See, e.g., In re Camino Real Landscape Maintenance Contractors, Inc.*, 818 F.2d 1503, 1505–06 (9th Cir.1987) (debtor's characteristics, not the creditor's, determine the interest rate); *accord Snider Farms*, 83 B.R. at 994–995. Most use a "formula" method for determining the applicable interest rate. The formula method begins with an interest rate employed in some other context, *e.g.*, the federal tax rate,[1] federal or state legal rates,[2] prevailing commercial/consumer loan rates,[3] the "prime rate",[4] "special loan" rates such as those offered by the Federal Land Bank or Farmer's Home Administration,[5] rates paid by the U.S. Treasury on federal bills, notes or bonds,[6] or an average of several of these rates.[7] Once a base rate is selected, the bankruptcy court generally makes an upward adjustment for the risks involved in a given case (otherwise known as a "risk enhancement" or "default premium").[8]

■ Virtually every circuit court of appeals to have addressed the issue, however, has adopted the "coerced loan" approach in determining what interest rate is appropriate under a cramdown provision. Under this approach, the bankruptcy court should look at the creditor's cost of making a new loan to the debtor in the amount of its allowed claim, including a profit factor, and use the current market rate for similar loans (loans of similar character, amount and duration) made in the region. *See General Motors Acceptance Corp.*, 999 F.2d at 67–70; *United Carolina Bank v. Hall*, 993 F.2d at 1130–1131; *In re Fowler*, 903 F.2d at 698; *In re Hardzog*, 901 F.2d 858, 860 (10th Cir.1990); *United States v. Arnold*, 878 F.2d 925, 930 (6th Cir.1989); *United States v. Neal Pharmacal Co.*, 789

1. *In re Ziegler*, 6 B.R. 3 (Bkrtcy.S.D.Ohio 1980).

2. *In the Matter of Crockett*, 3 B.R. 365 (Bkrtcy. N.D.Ill.1980).

3. *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982); *In re Kloberdanz*, 83 B.R. 767, 771–72 (Bkrtcy.D.Colo.1988); *In re Citrowske*, 72 B.R. 613 (Bkrtcy.D.Minn.1987); *In re Jewell*, 25 B.R. 44 (Bkrtcy.D.Kan.1982).

4. *In re Patterson*, 86 B.R. 226 (9th Cir.B.A.P. 1988).

5. *In re Wright*, 103 B.R. 905 (Bkrtcy.M.D.Tenn. 1989). *But see, In re Fisher*, 930 F.2d 1361, 1363–64 (8th Cir.1991); *United States v. Arnold*, 878 F.2d 925, 928–29 (6th Cir.1989).

6. *In re River Village Associates*, 161 B.R. 127 (Bkrtcy.E.D.Pa.1993); *In re Underwood*, 87 B.R. 594 (Bkrtcy.D.Neb.1988).

7. *In re Smith*, 178 B.R. 946, 952 (Bkrtcy.D.Vt. 1995); *In re Klein*, 10 B.R. 657 (Bkrtcy.E.D.N.Y. 1981).

8. *In re Smith*, 178 B.R. 946, 952 (Bkrtcy.D.Vt. 1995) is an exception.

F.2d 1283 (8th Cir.1986); *Matter of Southern States Motor Inns, Inc.*, 709 F.2d 647, 651–652 (11th Cir.1983), *cert. denied*, 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984); *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427, 431 (6th Cir.1982).[9]

The bankruptcy court appears to have correctly applied the coerced loan approach in the present case. It is not altogether clear whether the court used a "formula" method for determining the applicable interest rate, the evidentiary method, or a combination of the two, but the difference is immaterial where, as here, the rate selected by the court was consistent with the evidence submitted at trial regarding the prevailing market rate for similar loans in the region.

Joseph Hunting, a branch manager for 1st Source Bank, one of Farm Credit Services' regional competitors, testified that the maximum term which 1st Source offers for agricultural loans secured by real estate is fifteen years. He further testified that 1st Source's best borrowers—those with strong financial statements, substantial new worth, good repayment capacities and excellent repayment histories—qualify for a 9% variable interest rate on agricultural loans secured by real estate, and that other factors, such as a borrower's failure to make payments, failure to pay taxes and other liens on the collateral, adversely affect the interest rate which 1st Source offers to a particular borrower.

Douglas Sturgeon, a Special Accounts officer at Farm Credit Services, similarly testified that Farm Credit Services' twenty-year fixed rate for debtors with a financial history similar to the Koopmans (Tier 5—its worst rating) would be 11.75%. Mr. Sturgeon also indicated that the twenty-year fixed rate for Tier 1 debtors (Farm Credit Services' most favorable rating) would be 10%.

The debtors argue in the alternative, that even if the bankruptcy court's use of the prime rate may have appropriate, the court erred in imposing a 1.5% risk enhancement where, as here, the creditor is oversecured

and there is little risk of a subsequent default.

The Koopmans maintain that the risk of default is minimal in the case of a reorganizing debtor because the bankruptcy court may not confirm a reorganization plan without first finding that the plan is feasible. But "the risk of default for a reorganizing debtor may be at least as great as that of a nonreorganizing corporation debtor of comparable size and structure. Courts must therefore consider the risk that the debtor will not be able to complete the reorganization in determining the prevailing market rate on deferred payments...." *United States v. Neal Pharmacal*, 789 F.2d at 1288. *See also In re Smith*, 178 B.R. 946, 953 n. 11 (Bkrtcy.D.Vt. 1995); *In re Snider Farms*, 83 B.R. at 998–999. While it is true that court approval of a plan may diminish the risks involved in a coerced loan, *In re Welco Industries, Inc.*, 60 B.R. 880 (9th Cir.B.A.P.1986), it does not eliminate those risks.

Some courts have, in the case of an oversecured creditor such as Farm Credit Services, "capped" the interest rate at the contract rate. *United Carolina Bank v. Hall*, 993 F.2d at 1131; *In re Colegrove*, 771 F.2d 119, 123 (6th Cir.1985); *In re Mellema*, 124 B.R. 103, 107–108 (Bkrtcy.D.Colo.1991). Other courts have declined to do so uniformly, even in the case of an oversecured creditor. *See, e.g., In re Hardzog*, 901 F.2d at 860; *United States v. Arnold*, 878 F.2d at 930. Although the Koopmans cite such cases in passing, they do not appear to argue that these cases preclude an interest rate exceeding 8.75%; neither the bankruptcy court nor Farm Credit Services perceived the need to address such an argument. In any event, the court does not believe that such a "cap" should apply in a case such as this, in which an interest rate selected more than eighteen years before the plan submission to the bankruptcy court has no probative value in determining the present market rate.

---

9. Some courts apply a creditor-specific approach and hold that the appropriate interest rate is that charged by the particular creditor being forced to extend credit for a loan of similar character, amount and duration. *See General Motors Ac-*

*ceptance Corp.*, 999 F.2d at 68; *United Carolina Bank*, 993 F.2d at 1130–1131; *In re Mellema*, 124 B.R. 103, 107 (Bkrtcy.D.Colo.1991); *In re Cassell*, 119 B.R. 89, 93 (Bkrtcy.W.D.Va.1990); *In re Schaal*, 93 B.R. 644 (Bkrtcy.W.D.Ark.1988).

For the foregoing reasons, the judgment of the bankruptcy court is AFFIRMED.

SO ORDERED.