In re Mark Wallace **SMITH**, Noel Etola Smith, Debtors.

In re Mark Guy, Rhonda Guy, Debtors.

In re Alexander Deyoung, Heather Deyoung, Debtors.

In re Gina Leak, Wayne Leak, Debtors.

Nos. 02–4171–JAR, 02–4172–RDR, 02–4169–JAR, 02–4170–JAR.

Bankruptcy Nos. 99–41536–13, 99–41945–13, 99–422272–13, 99–42481–13.

United States District Court, D. Kansas.

May 24, 2004.

Susan A. Berson, Shook, Hardy & Bacon L.L.P., Kansas City, MO, for Appellant.

Jan M. Hamilton, Topeka, KS, pro se.

## MEMORANDUM ORDER AND OPINION

ROBINSON, District Judge.

Appellant Household Automotive Finance Corporation and OFL–A Receivables Corp. ("HAFC") appeals the order of the bankruptcy court applying a "formula method" over a "coerced loan approach" to determine the market rate of interest on a sub-prime loan for an automobile in a Chapter 13 bankruptcy. For the reasons set forth below, the Court reverses the order of the bankruptcy court and remands the proceedings for further consideration.

### I. Background.

Four cases involving separate Chapter 13 debtors have been consolidated into this appeal, as each has the same issue and all concern HAFC.[1] Appellant HAFC is a national indirect sub-prime auto loan lender specializing in high-interest loans to debtors with poor credit histories. The Appellee is the Chapter 13 Trustee for the Topeka area. The issue on appeal concerns 11

---

1. Debtors Mark and Rhonda Guy converted their proceedings to Chapter 7 on September 22, 2003.

U.S.C. § 1325(a) of the Bankruptcy Code. Under this so-called "cram down option" permitted by the Bankruptcy Code, a Chapter 13 debtor's proposed plan must provide each allowed, secured creditor a lien securing the claim and provide for future payments whose total value, as of the plan's date, "is not less than the [claim's] allowed amount." [2]

Appellant appeals the decision of the bankruptcy court applying a "formula rate" in determining the market interest rate for a sub-prime auto loan in a cram down plan, arguing that this formula rate, based on the local practice of an "Agreed Formula," does not give the present value of the loan as required by § 1325(a). The Agreed Formula is based on the sale of 52–week Treasury Bills ("T-bill") plus an added three percent for risk, which averages around 10%, compared to the typical contract rate of interest for sub-prime loans of 18–21%. Appellant argues that the present value is better reflected by the "coerced loan" formula, which entails a factual analysis done by the court on a case-by-case basis to determine the market rate of interest for similar loans in the regional area. In support of its argument, Appellant cites to *In re Hardzog*,[3] a Chapter 12 ruling that has been applied to Chapter 13 cases, but rejected by the bankruptcy court in these proceedings.

## II. Appellate Jurisdiction.

This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders and decrees" of bankruptcy courts within the Tenth Circuit.[4] The parties have opted to have the appeal heard by the District Court instead of the Bankruptcy Appellate Panel.[5] The appeal was timely filed by HAFC and the bankruptcy court's order is final within the meaning of 28 U.S.C. § 158(a)(1).[6]

## III. Standard of Review.

■ In reviewing an order of the bankruptcy court, an appellate court "reviews the factual determinations of the bankruptcy court under the clearly erroneous standard, and reviews the bankruptcy court's construction of [a statute] de novo." [7]

## IV. Discussion.

■ Subsequent to the bankruptcy court's decision, the Supreme Court determined the proper approach bankruptcy courts must take in determining the adequate rate of interest on cram down loans in Chapter 13 proceedings. Where a change in law occurs while a case is on appeal, the court applies the law in effect at the time of its decision.[8] In *Till v. SCS Credit Corporation*,[9] the Supreme Court held that the formula approach, requiring an adjustment of the prime national interest rate based on risk of nonpayment, was the appropriate method, specifically rejecting the coerced loan, presumptive contract rate, and cost of funds approaches advocated by the creditors.[10] The formula approach begins by looking to the national prime rate, reported daily in the press,

---

**2.** 11 U.S.C. § 1325(a)(5)(B)(ii).

**3.** 901 F.2d 858, 860 (10th Cir.1990).

**4.** 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1).

**5.** *Id.* at § 158(c); 10th Cir. BAP L.R. 8001–1.

**6.** *See* Fed. R. Bankr.P. 8001–8002.

**7.** *Taylor v. I.R.S.,* 69 F.3d 411, 415 (10th Cir.1995) (citations omitted).

**8.** *Miller v. City of Mission, Kan.,* 705 F.2d 368, 377 (10th Cir.1983).

**9.** —— U.S. ——, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004).

**10.** *Id.,* 124 S.Ct. at 1960–61.

with the bankruptcy court adjusting the rate based on the particular risk, using such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the plan.[11] The Court went on to state that this analysis requires a bankruptcy court to hold a hearing at which the debtor and creditor may present evidence about the appropriate risk adjustment, with the evidentiary burden "squarely on the creditors."[12] The Court declined, however, to decide the proper scale for the risk adjustment.[13]

In this case, the bankruptcy court approved a rate of T-bill plus a three percent risk adjustment, based on the local practice's "Agreed Formula" method. The bankruptcy court rejected as impractical the notion that a determination of the appropriate rate must be made on a case-by-case basis, holding that the "Agreed Formula" uniformly applied in all Chapter 13 cases. While the bankruptcy court correctly adopted a formula approach, its application of that formula was in error in light of the Supreme Court's conclusions in *Till*. First, the court did not use the prime rate as its base rate.[14] Although the T-bill rate is similar to the prime rate in that it is frequently published and adjusted, it is a riskless rather than low-risk rate. Second, the bankruptcy court did not conduct case-by-case evidentiary hearings to determine the proper risk adjustment for each loan, rejecting such a requirement as impractical given the high number of Chapter 13 filings in this district. The Supreme Court held otherwise, noting that some of the evidence necessary to determine the ap-

propriate risk adjustment "will be included in the debtor's bankruptcy filings," and that many relevant factors "fall squarely within the bankruptcy court's area of expertise."[15] Accordingly, the order of the bankruptcy court is reversed, and the cases are remanded for further proceedings consistent with the Supreme Court's directive in *Till*.

IT IS SO ORDERED.

---

11. *Id.*, 124 S.Ct. at 1961–62.

12. *Id.*

13. *Id.*

14. Although it ultimately used the T-bill plus 3% formula, the bankruptcy court noted that such a rate was established every four weeks,

indicating that a "comparable frequently-published, frequently-adjusted riskless rate should be chosen to replace the old base rate," and that it would endeavor to select such a rate in the near future.

15. *Till,* 124 S.Ct. at 1961–62.